## SULLIVAN et al. v. CITY OF GALVESTON. (No. 9218.)

Court of Civil Appeals of Texas. Galveston. April 10, 1928.

Rehearing Denied May 2, 1929.

480

Maco Stewart, of Galveston, and Albert J. De Lange, of Houston, for Tim Sullivan.

Lockhart, Hughes & Lockhart, of Galveston, for D. W. Kempner.

Terry, Cavin & Mills, of Galveston, for R. Lee Kempner.

Bryan F. Williams, of Galveston, for City of Galveston.

LANE, J. The city of Galveston brought this suit against Tim Sullivan and D. W. Kempner to recover upon the following bond:

"Ed. McCarthy, who carries on a banking business in the City of Galveston, Texas, under the name of Ed. McCarthy & Co., having been by the Board of Commissioners designated as one of the banks in which Treasurer of the said City is directed and authorized to deposit sums of money received by him to his credit as Treasurer of the said City, we, the said Ed. McCarthy as principal, and D. W. Kempner and Tim Sullivan as sureties, do hereby, covenant with the said City of Galveston, Texas, that the said Ed. McCarthy & Co. will pay interest on all such monies as may be deposited with him at the rate stipulated in his written obligation of even date herewith, and will safely keep and truly account for and pay over any and all sums which may be deposited with him on demand and as ordered by the Board of Commissioners of the City of Galveston.

"And we do jointly and severally bind ourselves, our heirs, executors and administrators, to indemnify and reimburse the said City of Galveston, Texas, for any and all loss, damage, cost or expense which may arise or flow from the failure of the said Ed. McCarthy & Co. to safely keep or to promptly pay on demand and as ordered by the Board of Commissioners of the City of Galveston any funds which may be so deposited with him by the Treasurer of the said City or any interest accrued upon the same.

"In witness whereof we have subscribed our names hereto on this the 29th day of July, 1925.

"Ed. McCarthy & Co.
"By Ed. McCarthy, Principal.
"D. W. Kempner,
"Tim Sullivan, Sureties."

The city of Galveston also made R. Lee Kempner a party defendant, praying, as against him, judgment upon a bond of like

import as the one set out above, which bore date June 2, 1925.

. The plaintiff city alleged that the principal of the bonds was Ed. McCarthy, who was doing business under the name of Ed. McCarthy & Co., and that McCarthy has been adjudged and was a bankrupt, and his bank was closed, and for such reason it was not necessary he be made a party defendant. .

Complaining of Tim Sullivan, D. W. Kempner, and R. Lee Kempner, the plaintiff substantially alleged that the city of Galveston, by proper resolution, designated Ed. McCarthy's bank as one of the banks in which its treasurer should deposit all sums of money received by him as such treasurer, from all sources of revenue whatsoever; that such resolution provided that the treasurer should not make any deposit in any bank so designated until such bank had entered into an obligation with the board of commissioners of the city to pay the treasurer of the city interest on the average daily balances at the rate of 4 per cent. per annum, and had furnished a good and sufficient bond satisfactory to the board, conditioned that such bank would safely keep and account for and pay over such money on demand and as ordered by the board; that thereafter McCarthy entered into a written obligation with the board whereby he bound himself to accept such funds as might be deposited with him by the city treasurer, and to pay interest thereon at the rate of 4 per cent. per annum at the end of each month, based on the average daily balance and to pay over such moneys on demand and as ordered by the board; that such written obligation bore no date, but as a fact was executed by McCarthy and delivered to and accepted by the board contemporaneously with the bond first executed by McCarthy, of date June 2, 1925, and signed by Tim Sullivan and R. Lee Kempner as sureties; that, after the execution and delivery of such written obligation and bond and prior to August 1, 1925, the treasurer deposited with Ed. McCarthy & Co. various sums of money belonging to the city, which had lawfully come into his hands as such treasurer, and that McCarthy properly and duly accounted for various sums but not all of such sums as had been deposited with him, and that there was a balance of the sums so deposited unpaid and owing by McCarthy to the city on the 1st day of August, 1925; that R. Lee Kempner was, on the 1st day of August, 1925, made treasurer of the city, and thereupon Ed. McCarthy entered into a new bond with the city, which was signed by Ed. McCarthy & Co. as principal and by D. W. Kempner and Tim Sullivan as sureties.

The plaintiff alleged that in the bond of date July 29, 1925, the words "even date herewith" were used by mistake, and that the reference to the "written obligation" mentioned therein was of date June 2, 1925, and it was the intention of the parties to the instrument to state that the instrument attached to the bond was of even date of the bond of date June 2, 1925.

The plaintiff further alleged that Tim Sullivan and R. Lee Kempner, the sureties on the first bond, the one of date June 2, 1925, were liable for all funds deposited by the terms of such bond, and that Tim Sullivan and D. W. Kempner, sureties on the last bond, the one of date July 29, 1925, were liable for all funds deposited after August 1, 1925, and also for the funds in the hands of McCarthy at the time of his failure; that both sets of sureties are liable for parts of the funds so deposited with McCarthy, and that it is difficult to determine when the default complained of actually occurred as a matter of law; that subsequent to the execution of the bond of date June 2, 1925, the treasurer deposited various sums with McCarthy which were credited on the books of McCarthy to the city; that such deposits were carried upon the books of McCarthy in several accounts, one of which was designated as "interest account," as against which only a limited class of vouchers or checks of appellee, drawn upon its treasurer, were to be charged, one as "checking account," into which deposits were carried for the purpose of providing for the payment of the bulk of plaintiff's vouchers or checks against its treasurer, and a third account, designated as the "pay roll account," into which there were transferred from the "checking account" credits against which there were charged, as the same were presented and paid, vouchers of appellee on its treasurer issued to pay the salaries, wages, and compensation of its officials, servants, agents, and employee; that the deposits made and credited in the "interest account" consisted of funds belonging to appellee and lawfully received by its treasurer for its account from various sources as well as funds which were from time to time by the treasurer transferred from funds belonging to plaintiff and under the lawful control of the treasurer in other duly designated depositaries; that the deposits in the "checking account" consisted of funds belonging to appellee and transferred by its treasurer from other depositaries as well as sums transferred on the order of the treasurer from the above-mentioned "interest account" with McCarthy to such "checking account"; that the "pay roll account" consisted entirely of sums appropriated and transferred under the orders of the treasurer from the "checking account" on McCarthy's books to such "pay roll account" on those books, which was done simply for the purpose of establishing a separate account in which certain classes of plaintiff's checks on its treasurer should be charged when paid; that all of the sums evidenced in all of such accounts represented funds belonging to the city and lawfully coming into

the custody of its treasurer and by him deposited with McCarthy, doing business under the name of Ed. McCarthy & Co.; that in no instance where a transfer of credits due to the city and its treasurer in its behalf was made upon the books of the bank from one of the above-mentioned accounts to another of them was such transfer intended to be or was it in fact a payment in any manner to the city, nor was it intended to nor did it in fact in any way affect the city's title to the funds evidenced by such credits, but that the result of the transfer was in each instance to evidence in the account to which it was made so much of the indebtedness to the city as was theretofore evidenced in the account from which the transfer had been made. And the credits shown in all of the accounts mentioned evidenced indebtedness to the city from McCarthy because of deposits made with him of funds belonging to the city and lawfully coming into the hands of its treasurer for its account and by the treasurer deposited in the McCarthy bank; that R. Lee Kempner, having duly qualified as treasurer of the city under his appointment above mentioned, received on August 1, 1925, from his predecessor in office, the funds of the city on deposit in its several depositaries; that at that time there was a balance owing to the city from McCarthy in the amount of $184,976, which was evidenced by a balance of $45,136.88 in the "checking account," a balance of $138,038.-37 in the "interest account," and a balance of $1,800.50 in the "pay roll account"; that R. Lee Kempner, as treasurer of the city, received on the date just mentioned his predecessor's two checks on Ed. McCarthy & Co., one in the amount of $138,038.37 to cover the above-mentioned balance in the "interest account," and the other in the amount of $45,-136.38 to cover the balance in the "checking account"; that those checks were accepted by R. Lee Kempner as equivalent to the respective amounts in cash due to him from his predecessor in office and were by him deposited with McCarthy for his credit as treasurer of the city of Galveston and as funds belonging to the city and lawfully coming into his hands as its treasurer; that McCarthy accepted such checks as deposits in the amounts called for by the same, charged them to the previous accounts which he had kept with the preceding treasurer, and opened up new accounts with the city through R. Lee Kempner as its treasurer, and entered the amounts of the checks as deposits made therein; that the balance of $1,800.50 at that time existing in the "pay roll account" was thereafter all paid out by McCarthy on vouchers or checks of the city duly executed and delivered under the authority of its board of commissioners, and was thus duly paid over and accounted for by McCarthy; that subsequently to the deposit by R. Lee Kempner of his predecessor's checks, as just above stated,

he did, as the treasurer of the city, on various dates up to and including October 1, 1926, deposit out of the city's funds coming into his custody various amounts in the bank of Ed. McCarthy, the amounts so deposited as evidenced by the "interest account" and "checking account" in that bank being set forth in detail in the petition; that the deposits in both of the accounts in many instances consisted of funds transferred from other banks to the McCarthy bank; that in each instance where it was shown that deposits were made in the bank of Ed. McCarthy of funds transferred from other banks, such transfers were made upon checks or orders of the treasurer of the city on the respective banks against accounts due and owing by such banks on deposits made therein of funds belonging to the city and lawfully coming into the custody of its treasurer, and that such checks or orders of the treasurer were in each instance received by McCarthy as the equivalent of cash deposits and in each instance such checks or orders were duly honored by the respective banks on which they were drawn.

And, with reference to the amounts entered as credits or deposits during the period mentioned in the "payroll account," it was alleged that all of such credits or deposits were amounts which were transferred to such account from the "checking account" and were included in the amounts shown in the statement referred to as having been paid out of the latter account; that McCarthy had duly accounted for and paid out all of the amounts so transferred into the "pay roll account" excepting the amount of $1,648.66, which was a balance due and owing to the city on the deposits transferred into that account; that McCarthy, up to about October 6, 1926, accounted for and paid out from the funds so deposited with him various amounts as called for and evidenced by proper vouchers drawn by the city and executed in the manner prescribed by its charter; that when the bank was closed it was indebted to the city in the total amount of $245,242.94, of which $218,710.69 appeared as the balance in the "interest account," the amount of $24,-533.59 as the balance in the "checking account," and $1,648.86 as the balance in the "pay roll account," and $350 covering deposits made by the chief of police and entered in a separate account.

Recovery of the total amount above stated, with interest, was sought against the appellants Tim Sullivan and D. W. Kempner, as the sureties on the above-mentioned bond of July 29, 1925.

In connection with the balance claimed by the city due to it from the McCarthy bank, and for which it sought to hold the sureties, Sullivan and D. W. Kempner, liable, the petition alleged that on October 7, 1926, Ed. McCarthy attempted to make a payment to the

city in the amount of $90,000 by giving his check in that amount on the United States National Bank of Galveston payable to the order of the last-mentioned bank, with understanding that the amount of the check should be charged against the account which McCarthy then had with that bank and should thereupon be placed to the credit of the city in such bank. The United States National Bank carried out that understanding by charging the $90,000 to McCarthy's account with it and crediting that amount on its books to the city. On the date that McCarthy executed and delivered the check mentioned to the United States National Bank he took credit for its amount on his own books by charging that amount to the city in its "interest account" with him. And in its petition herein the city asserted that in truth and in fact such transactions did not constitute nor result in any valid payment to the city, because the same constituted a voidable preference under the bankruptcy laws and has been established as such in a suit against the city by the trustee of the McCarthy estate in the United States District Court for the Southern District of Texas which court had rendered its judgment, which had become final under which the trustee was given recovery against the city for the full amount of the $90,000, with interest.

The petition contained further general allegations to the effect that each of the bonds previously mentioned had been by McCarthy and the respective sureties executed and delivered for the purpose of securing to McCarthy the privilege of receiving and continuing to receive the city's funds, and that, as shown, McCarthy had given more than one bond as depository of the city of Galveston; that it was difficult to determine when the defaults set forth in the petition should be deemed in law to have occurred and which set of sureties on the two bonds are liable on the claims asserted in the petition.

In addition to the joinder of R. Lee Kempner, as surety on the first bond, the city, pleading in the alternative against him alone, alleged, in substance: His appointment as treasurer of the city; the adoption by the board of commissioners of the city of a resolution designating a number of banks in the city, including that of McCarthy, as depositaries, in which the treasurer was authorized and directed to make daily deposits of such sums of money as should'be received by him from all sources of revenue whatsoever; the lack of any other action of any character on the part of the board of commissioners or any authorized representative of the city authorizing or directing the treasurer to transfer funds from one depositary to another, except in so far as the resolution mentioned authorized the same, or directing or authorizing the deposit in such depositaries, or any of them of any funds of the city excepting such

as the language of that resolution covered; that R. Lee Kempner had, as shown by the detailed statement, made many of the deposits in the McCarthy bank, upon which the balance due to the city arose, by transferring into and depositing with that bank funds belonging to the city which had previously been placed in other of the designated depositaries; that funds belonging to the city and received by R. Lee Kempner as its treasurer included lawful revenues of the city arising from various sources, including proceeds arising from the sales of various bonds of the city which were issued and sold during his term of office; that he did not keep the proceeds arising from the sales of bonds separate and apart from other funds of the city coming into his custody as its treasurer, but commingled all of the city's funds in such a manner that it had become impossible to determine the character of or the source of the city's funds deposited in the McCarthy bank; that R. Lee Kempner, as the treasurer of the city, was relieved from responsibility for the safe-keeping and due accounting of the city's funds in the McCarthy bank only in so far as the balance owing by that bank to the city was due upon deposits embraced within and covered by ,the terms of the resolution authorizing deposits by the treasurer in the depositaries designated; that R. Lee Kempner had never himself accounted for the balance due from the McCarthy bank, or any part thereof, but had in reports shown the shortage in funds of the city in his hands due to the failure of that bank.

The prayer of the petition was for judgment in the city's behalf for the full amount of its debt, interest, and costs against the defendants in such proportion and to such extent against each defendant as he might be legally liable, and that, if recovery should be denied on the bond sued upon, or either of them, because the debts asserted by the city, or any part thereof, should be determined to have arisen from deposits made by R. Lee Kempner which did not fall within the terms of and were not covered by such bonds, then plaintiff have judgment against him for the amount of its debt, interest, and costs, excepting such portion of the debt, if any, that the said defendant might properly show to have arisen from deposits made by him in conformity with the terms of the resolution of the board of commissioners of the city above referred to.

Defendant Tim Sullivan interpleaded David Fahey and R. Lee Kempner as defendants and alleged:

That the resolution of the board of commissioners of the city was adopted on June 4th and not on July 30th, as alleged by the plaintiff, but that as a fact when the resolution was adopted the bonds of the depository banks were presented and were by the board approved. That such resolution was the only one passed by the board governing and con-

trolling the matters referred to, and that Ed. McCarthy submitted to the board a written obligation, as called for in the resolution, reading as follows: "Ed. McCarthy, who carries on a banking business in the City of Galveston, Texas, under the name of Ed. McCarthy & Co., having been by a resolution adopted by the Board of Commissioners of the City of Galveston on May 28, 1925, designated as one of the Banks in which the Treasurer of said City is directed and authorized to make deposits of such sums of money as shall be received by him from all sources of revenue whatsoever to his credit as Treasurer of the said City, does hereby agree to accept for and on behalf of the City such funds as may be so deposited by it or its Treasurer, and does agree and obligate himself to pay interest thereon at the rate of four (4) per cent per annum, which interest shall be payable at the end of each month, and shall be based on the average daily balances for such month, and does further bind and obligate himself that he will safely keep and account for and pay over all such monies on demand and as ordered by the Board of Commissioners of the City of Galveston."

That "there existed no written obligation of even date with said bonds of July 29, 1925. The bond sued on provides that the said 'Ed. McCarthy & Co. will pay interest at the rate stipulated in his written obligation of even date herewith', thereby making such obligation so referred to a part of the bond. That no such obligation so referred to in said bond of July 29, 1925, was ever in existence, and therefore the bond was incomplete and void. The bond provides that said Ed. McCarthy & Co. 'will pay interest,' but the bond does not state at what rate or from what date the interest is to run; that the obligation signed by McCarthy & Co. and attached to the bond of June 2nd, recites that said Ed. McCarthy & Co. having been 'designated as one of the banks in which the Treasurer of said City is directed and authorized to make deposits of such sums of money as shall be received by him *from all sources of revenue whatsoever'*, and same continues to recite that said McCarthy & Co. 'does hereby agree to accept for said City such funds as may be so deposited,' meaning thereby that McCarthy & Co. would accept monies received by the Treasurer 'from all sources of revenue whatsoever' and said obligation did on the part of said McCarthy & Co. obligate himself to pay 'interest thereon at the rate of 4% per annum' said bond covers the safe keeping of 'such sums of money as shall be received from him (City Treasurer) *from all sources of revenue whatsoever*,' and it was not intended by the sureties on said bond, nor did the bond undertake to guarantee anything whatever concerning any money whatsoever other than monies arising from the 'revenues' of the City; defendant Sullivan is not advised as to what monies deposited with Ed. McCarthy & Co.

constituted 'revenues'; that by the bond it is provided that the 'Treasurer of the City is directed and authorized to deposit sums of money received by him to his credit as Treasurer of said City'; and by the terms of said resolution and of said bond the Treasurer is authorized to make 'daily deposits'; that it was not contemplated by the parties to the bond nor is it provided in the bond, that there shall be any liability for monies other than such as were received by the treasurer from day to day, and by him on each day deposited, and especially it was not contemplated by the parties, nor provided for in the bond that the treasurer should move monies about from one bank to another, as is shown to have been done by the allegations of plaintiff's amended petition; that the treasurer not only received revenues of the City but also monies from the sale of bonds, and also trust funds from the State and County of taxes, and which trust fund being by an act of the Legislature declared a trust for the purpose of aiding the City of Galveston in paying interest and sinking fund upon an issue of bonds, the proceeds of which were to be used in the raising of the grade of the City, and in which Act it is specially provided that the use or diversion of such monies for any other purpose whatsoever is especially prohibited, and which Act of the Legislature further provides that 'whenever the monies in the hands of the City Treasurer received from the State under the provisions of this or any previous law, shall exceed one year's interest and 2% sinking fund the excess shall be invested by the City' in certain named securities. It is nowhere contemplated in said Act that monies received by the City Treasurer from the Collector of Taxes of Galveston County should constitute revenue of the City, but it is especially provided there that such monies constitute a trust fund belonging to the State of Texas, and is to be administered by the City Commissioners as agents of the State; that the Treasurer received from time to time from the State and County Collector of taxes various sums of money, and which monies were by said Treasurer intermingled and commingled with other monies received by said Treasurer from the sale of bonds, and which monies received by the Treasurer has so intermingled and commingled same with revenues of the City that it is impossible to determine the amount of liability, if any, on the bond sued on herein; that there is no liability under the bond sued on for the Trust fund so received from the Collector of Taxes as same did not constitute 'revenue' nor did same constitute funds belonging to the City of Galveston. Defendants denied all of plaintiff's allegations.

"That the bond sued on was not executed to protect funds in the hands of Ed. McCarthy & Co. prior to the approval of the bond of July 29th; that certain funds that should

have been on August 1, 1925, in the hands of said McCarthy & Co. were not in fact in his possession but were merely entered on his books without having the funds on hand; that after the execution of the bond in controversy, the City of Galveston did, on August 6th pass a resolution reading 'Resolved that the same banking arrangements as have been obtained for the past two years be continued, and that the same pay roll account, free of interest not to exceed $20,000.00 be continued with Ed. McCarthy & Co., * * *' and such resolution constituted a change in the contract and relieved the sureties on the bond sued on; that the reference in said resolution that 'the same banking arrangements as have obtained for the past two years' refers to the fact that the City had from time to time carried what was styled 'a checking account' in contradistinction from the 'interest account' carried with said Ed. McCarthy & Co. as well as in the other banks constituted depositories of the City, of which there were several, as set out in plaintiff's petition, and by such resolution it is understood that monies withdrawn from the hands of Ed. McCarthy & Co., and voluntarily by the City placed in what was styled 'a checking account', withdrew said funds from the protection of said bond that protected monies placed at interest with Ed. McCarthy & Co. (as with other banks and no liability whatsoever was created by said bond as to any funds in such 'checking account' because under said Resolution of August 6, 1925, it was contemplated, understood and directed that there should be maintained 'a checking account' on which it is understood no interest whatsoever would be charged, and said bond being merely for the revenue bearing interest, it was provided in said Resolution that monies in the checking account would bear no interest and would not be covered by said bond, and furthermore funds in other depositories properly protected by bond were from time to time by the Treasurer, without authority of the Board of Commissioners, checked out of such depositories and re-deposited with Ed. McCarthy & Co. sometimes in the 'interest account' and sometimes in the 'checking account'. Said authorized 'banking arrangements' also consisted of the fact that numerous officials charged with the collection of revenues of the City did themselves respectively deposit daily collections in the depositories of the City, but not to the credit of the City Treasurer, and said sums so daily deposited were at the end of each month by the bank of deposit credited to the account therein of the City Treasurer in such bank and same constituted a change in the terms and conditions of the bond sued on. That the proper authorities of said City did on October 5, 1926, draw a check on Ed. McCarthy & Co. for the sum of $148,748.24, and which check was cashed and by the direction of the Treasurer, said sums were withdrawn from the account of the City of Gal-

veston in the bank of Ed. McCarthy styled 'interest account'. Money arising from revenues and on which interest was payable was the only account undertaken to be protected under the terms of the aforesaid bond; that said sum so withdrawn from the checking account was by said City Treasurer deposited with the bank of Ed. McCarthy as an account to be kept free of interest, and on which sum no interest was to be charged, and this was in accordance with the same banking arrangements that had theretofore obtained, and that said Resolution of August 6, 1925, authorized the Treasurer to maintain with Ed. McCarthy & Co. an account on which no interest would be charged. That by the drawing of said check and transferring of said funds from the interest account to the checking account, the sureties on the bond in question were relieved.

"That said resolution of August 6, 1925, constituted a change in the terms and conditions and liability and obligation under said bond, and thereafter no liability whatsoever existed under said bond by reason of such change.

"That David Fahey was a co-partner of Ed. McCarthy and that a business was conducted by them under the name of Ed. McCarthy & Co., that both said David Fahey and said Ed. McCarthy were co-partners in various speculative enterprises; that Fahey was liable for the funds deposited just as well as McCarthy; that defendant Sullivan was induced to sign said bond by reason of the representations made to him by Fahey that he was a partner of and interested in the bank conducted under the name of Ed. McCarthy & Co., that said Fahey had informed said Sullivan that he, Fahey, was a member of the firm of Ed. McCarthy & Co., and thereby induced said Sullivan to become a surety on said bond; that with the monies of the City of Galveston placed with said Ed. McCarthy & Co., certain real property was purchased by said Fahey and still held by him; that it was represented to Tim Sullivan as an inducement to have him sign said bond that he (Fahey) was a partner therein; that as an inducement to sign said bond representations were made by the Finance Commissioner of the City of Galveston that the only liability under the bond would be for monies from any funds arising out of any revenues of the City, such as taxes, burial fees, waterworks, sewerage fees, and similar items, and that the total amount of liability at any one time would not exceed $20,000.00 and particularly that monies arising from the sale of bonds in the hands of the City Treasurer would be kept in the United States National Bank and not placed as 'revenue' with Ed. McCarthy & Co.; that the monies deposited in the bank of Ed. McCarthy were so commingled and intermingled that it was impossible to determine the amount that was deposited from the sale of bonds, from trust funds and monies other than 'revenues'; Sullivan denied the execu-

tion of the bond sued on as charged; that the bond of July 29, 1925, was signed by the sureties, but denied that same was in lieu of any other bond. It is recited in said bond that interest shall be paid at the rate stipulated in McCarthy's 'written obligation of even date.' There was no written obligation of July 29th, but some person without the knowledge and consent of defendant Sullivan did detach from the bond on June 2nd the obligation of said McCarthy, and did without the authority of said Sullivan attach said obligation to the bond dated July 29th, and thereby change was made in said document of July 29th, and defendant pleaded non est factum.

"That at the time of the signing of said bond .and the inducement leading Sullivan to so sign same, it was represented to said Sullivan by McCarthy as well as by the Commissioner of Finance and Revenue of the City of Galveston, who in the matter represented said City, that said Ed. McCarthy & Co. was simultaneously executing an obligation to the City as was recited in said bond, limiting the liability of the sureties to the cash to be deposited solely from the current daily revenues of the City, such as fees and fines, and taxes, and other like items, not to exceed at any one time $20,000.00, and on all of which the interest to be paid was to be at the rate of 4% per annum, but which obligation was not so simultaneously or thereafter executed by said Ed. McCarthy & Co., but on the contrary some one without the knowledge or consent or authority of Sullivan subsequently attached to said bond of July 29th the paper attached to the bond of June 2nd; that said paper so attached to said bond of July 29th is different from the obligation as represented to Sullivan was to be executed simultaneously by Ed. McCarthy & Co. That said Sullivan would not have executed said bond had he known or been informed that there would be subsequently attached to said bond the paper hereinbefore described; that no one was authorized to deliver such bond to the City for approval without such obligation as was so represented as being simultaneously executed by Ed. McCarthy & Co., limiting the liability of the sureties to the daily revenues daily deposited in said bank to the sum of $20,000.00. The delivery of such bond was without authority and the bond void; that the bond of July 29th was prepared by the City of Galveston and not by Sullivan; that such obligation was a prerequisite to depositing funds in the bank under the provisions of the City Charter providing that 'all monies belonging to said City and received by any officer or agent thereof, either from collections, fines or any other source whatsoever, shall be by him deposited with the said Treasurer daily', and the 'Charter further provides that the Treasurer is required to issue duplicate receipts for all monies so received, giving one to the party paying the said money into the Treasury and one to the City Auditor; the City Charter further provides 'that the Treasurer shall make daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit as Treasurer of such City, in one or more banks situated in said City to be .selected by said Board of Commissioners, and any such bank, before any such deposit is made therein, shall be required to enter into an obligation with the Board of Commissioners to pay into the Treasury of such City interest at the rate to be fixed by said Board, and which rate may be changed in the same manner, and such rate not to be less than 3% per annum * * * the said banks shall execute a good and sufficient bond * * * conditioned that such bank * * * shall safely keep and account for and pay over said money on demand and as ordered by the Board of Commissioners.'

"That the effect of that provision of the Charter was to protect the sureties on the bonds of the respective depositors named in plaintiff's petition, in that monies placed by the Treasurer in any one of the depositories was safeguarded and protected under the bonds given by such depository, and when the funds were thus placed in any one depository same were beyond the reach of any official of the City and could only be removed from such depository by an order of the Board of Commissioners; and thereby the sureties on any bond of any depository could be liable and would be liable only for the sums originally deposited with such depository; that various employees and officials of the City received monies from time to time for said City and said respective persons receiving said monies would place said money in various banks without the same being paid to the Treasurer, and without the intervention of the Treasurer, the delinquent Tax Collector made deposits in the First National Bank; the Building Inspector made deposits in the First National Bank; the Tax Collector deposited all monies collected by him in the South Texas National Bank; monies arising from the John Sealy Hospital were deposited by those in charge of the Hospital in the South Texas National Bank; the Plumbing Inspector deposited funds collected by him in the South Texas National Bank; the Secretary of the Water Works deposited revenues collected by him with the United States National Bank; the State and County Tax Collector of Galveston County, under the Act of the Legislature providing for the Trust Fund, deposited all such monies with the United States National Bank. That said persons did not turn such funds over to the Treasurer and said funds were not deposited daily by the Treasurer as funds of the City, and, therefore, there was no liability on the bond.

"That on and after July 29, 1925, there was not on hand and under the control and custody of said Ed. McCarthy & Co. any monies what-

soever and the check described in plaintiff's petition as of date August 3, 1925, drawn by Robert I. Cohen, Jr., on Ed. McCarthy & Co. in favor of R. Lee Kempner, Treasurer, in the sum of $138,038.37 and that of date August 1, 1925, for $45,135.88 were worthless for the reason that said Ed. McCarthy & Co. had no funds on hand with which to pay said checks, but at the time of the drawing of such checks the said Ed. McCarthy was hopelessly insolvent; that same was a mere item of 'bookkeeping' without any intent or attempt to collect such checks; that said Sullivan as surety on said bond is in nowise liable for said sums represented by said checks; and with respect to the alleged bond of said Ed. McCarthy bearing date July 29, 1925, no liability whatsoever would be created as to Tim Sullivan as surety with respect to said alleged deposits; and that all actual monies paid by the City Treasurer to said McCarthy on and after July 29, 1925, have been paid out to the City; that the attempt to transfer funds to Ed. McCarthy & Co. by the Treasurer from other depositories was without warrant and void, and created no liability on the bond sued on.

"That it had been the practice of the City of Galveston to conduct a banking arrangement so as to transfer funds from one depository to another depository for a period of about two years immediately prior to August 6, 1925, and to transfer funds from various other depositors to Ed. McCarthy & Co., placing some of said monies so transferred in an account kept there styled 'interest account' wherein interest was allowed and computed at the rate of 4% per annum and other monies were deposited to the credit of what was known and styled 'checking account' on which no interest was charged, but the sum of interest chargeable to McCarthy on the total amount of his monthly balances in both accounts amounted to more than 3% but less than 4% per annum; that on August 6, 1925, the resolution herein set forth was passed without the consent and knowledge of this defendant, and thereby a change was made in the subject matter as between the principal, to wit, Ed. McCarthy, and the City of Galveston, thereby the sureties on the bond of said Ed. McCarthy were released and relieved from further liability thereon. That the check for $90,000.00 described in plaintiff's amended petition was drawn and cashed and the proceeds applied to the payment of debts of plaintiff.

"The alleged bond of July 29, 1925, and the alleged obligation of Ed. McCarthy, and all proceedings with reference to appointment of depositors, were and are void and of no effect, same being contrary to the constitution and laws of the State of Texas, and being made without bids, and containing stipulations and conditions contrary to the provisions of law, and not containing the conditions and stipulations, or any of them, permitted and required by law."

Defendant Sullivan also sought to recover over against David Fahey and R. Lee Kempner such sums as might be recovered against him by the city.

D. W. Kempner adopted the pleadings of his codefendant, Tim Sullivan. R. Lee Kempner pleaded misjoinder.

The court, upon objection of the city, refused to make David Fahey a party defendant as prayed for by Sullivan and D. W. Kempner, sustained the plea of misjoinder asserted by R. Lee Kempner, and also sustained general demurrers of R. Lee Kempner, as against both the city's petition and the pleadings of Sullivan and D. W. Kempner.

Upon the pleadings and evidence, the court instructed the jury to return a verdict for the city against Tim Sullivan and D. W. Kempner for $245,242.89, and, upon such verdict being returned, judgment was rendered in favor of the plaintiff against such parties for the sum named, with 6 per cent. interest per annum thereon from the 8th day of October, 1926, less a credit of $24,524.89 as of date October 10, 1927. Tim Sullivan and D. W. Kempner have appealed.

The record in this case consists of a transcript of 224 pages of foolscap paper, and a statement of facts of 1,696 pages. The pleadings of the several parties cover 117 pages of the transcript. Appellants have filed and presented 88 assignments of error and presented thereunder 61 propositions. Owing to the great length of the transcript, the voluminous statement of facts, and the numerous assignments and propositions, we shall not undertake to make a detailed discussion of but few of the numerous propositions, as to do so would require at our hands much unnecessary labor and the writing of an opinion of inexcusable length.

By appellants' first proposition they insist (1) that the court erred in not instructing a verdict in their favor upon their request therefor, because the bond signed by them as sureties is void, in that its provisions are made to conform to the requirements of charter provisions of the city of Galveston relative to depository banks which are inconsistent with the statutes of the state of Texas, which provide for the designation of a depository for city funds and for the bond to be executed by such depository; (2) because, after the bond had been executed, the commissioners of the city passed a resolution making a change in the banking arrangements with the depositories, and therefore the sureties were released from liability on the bond; (3) because the bond was never properly delivered and therefore they never became liable as sureties; (4) because, after they had signed as sureties there was attached thereto, without their authority, a document that was detached from a prior

bond which made a change in the bond signed by them, the document so attached not being the one referred to in the bond signed by them and referred to in such bond as bearing even date therewith, there being no such document attached to the bond signed by them, therefore such bond was incomplete and void; (5) because the evidence showed that the sums of money called for in the verdict of the jury included moneys claimed to have been on hand, but which were not on hand on the 1st day of August, 1925, the date on which they signed the bond as sureties, and therefore they were not liable under the bond for the repayment of such funds.

The undisputed facts show that prior to August 1, 1925, the date on which R. Lee Kempner became treasurer of the city, he and appellant Tim Sullivan were the sureties on the bond of Ed. McCarthy, whose bank had been selected as one of the several banks as a depository for the funds of the city, which bond bore date of June 2, 1925; that attached to said bond was a resolution adopted by the proper officials of the city, reading as follows:

"Resolved, That until this Board shall hereafter otherwise direct, there shall be and are hereby designated by this Board as Banks in the City of Galveston in which the Treasurer is authorized and directed to make daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever to his credit as Treasurer of said City the following Banks: The First National Bank of Galveston, W. L. Moody & Co., City National Bank, South Texas National Bank, United States National Bank and Ed. McCarthy & Co., *and that the rate of interest which the said banks shall pay on such deposits is hereby fixed at four per cent. per annum which shall be payable at the end of each month to the City Treasurer, and shall be based on the average daily balances for the month, and that the City Treasurer shall not make any deposit of any such funds in any of the aforesaid banks until it has entered into an obligation with this Board to pay to the Treasurer of the City interest at the aforesaid rate and shall have furnished good and sufficient surety satisfactory to this Board, conditioned that such bank will safely keep and account for and pay over said money on demand and as ordered by the Board of Commissioners.*" (Italics ours.)

It was shown that the resolution bore no date; that, after R. Lee Kempner became treasurer, the board of commissioners of the city received from McCarthy the following letter:

"Gentlemen:—Owing to the fact that Mr. R. Lee Kempner, one of the sureties on the bond dated June 2, 1925, given by the undersigned as one of the banks designated as a depository for City funds has been appointed City Treasurer, the undersigned herewith tenders a new bond in like terms with D. W. Kempner and Tim Sullivan sureties thereon, with the request that the same be approved and accepted in lieu of the previous bond."

The bond mentioned was that signed by Tim Sullivan and D. W. Kempner of date July 29, 1925, hereinbefore set out.

On July 30, 1925, after the receipt of the letter of McCarthy, the board adopted an ordinance which reads as follows:

"Section 2. That the certain bond dated July 29th, 1925, with Ed McCarthy, doing business under the name of Ed McCarthy & Co., as principal, and D. W. Kempner and Tim Sullivan, as sureties thereon, given by the said Ed McCarthy & Co., as one of the banks designated as a depository for City funds, be and the same is hereby approved and accepted in lieu of the bond dated June 2, 1925, in like terms with the said Ed McCarthy as principal and T. Sullivan and R. Lee Kempner as sureties thereon, and that the principal and sureties on the last mentioned bond be and they are hereby released from any further liability thereon."

At the time the second bond was given, there was no change made between McCarthy and the city with reference to the former's obligation to pay the city interest on its daily deposits. McCarthy had not demanded the making of any such change, nor had the city requested him to make any. And there is nothing in the record in the minutes of the board relative to any interest payments to be required from the depositaries between the adoption of the above resolution designating them and the ordinance above mentioned approving the bond adopted on July 30, 1925.

McCarthy, at the time he executed this second bond, did not execute any new or other written obligation (or, as he refers to it in his testimony, any new proposal) with reference to the payment of interest.

At the time appellants Sullivan and D. W. Kempner signed the bond, there was no paper attached to it. Sullivan signed the bond at the McCarthy bank in the presence of Ed. McCarthy, the principal, and S. L. (Sam) McCarthy, brother of Ed. McCarthy, and other employees of the bank. S. L. McCarthy took the bond to R. Lee Kempner, who took it to D. W. Kempner, and explained to him that it was being furnished in lieu of the bond on which he (R. Lee Kempner) was surety, and, after having such information, D. W. Kempner signed the same, and it was then returned to S. L. McCarthy, who was at the time cashier of the McCarthy bank and also commissioner of finance and revenue of the city. After the bond had been returned to S. L. McCarthy, Ed. McCarthy instructed him to take or send it over to R. Lee Kempner so that he might send it to the city hall. With reference to the matters last mentioned, Ed. McCarthy testified that his reason for delivering the bond to his brother, S. L. McCarthy,

was that it was his custom to hand such papers over to him *as cashier*, to be delivered by him to the proper authorities.

The bond was at the trial produced by the city secretary from the files of her office and had bradded or attached to it the interest obligation of McCarthy (hereinbefore set out). According to the secretary's testimony, the two papers were so attached when they were handed to her by S. L. McCarthy and had remained so since they thus came into her possession.

The papers by reason of the brad holes and in other respects showed that the interest obligation had previously been attached to and detached from some instrument other than the bond in question and there was no evidence to show by whom it was attached to the bond.

After the delivery of the bond to the board of city commissioners, the board, on the 6th day of August, 1925, adopted the following resolution:

"Resolved, that the same banking arrangements as have obtained for the past two years be continued and that the same payroll account, free of interest of not to exceed $20,000.00, be continued with Ed McCarthy & Company, this in consideration of the large volume of detail and work resulting therefrom in the handling of city vouchers, and that the City Treasurer be authorized accordingly."

Appellants cite section 5 of article 11 of the State Constitution, known as the Home Rule Amendment, which provides that cities of more than 5,000 inhabitants may adopt its own charter, provided that such charter, or any ordinance passed under it, shall contain no provision inconsistent with the Constitution or of the general laws enacted by the Legislature, and contend that the provisions of articles 2559 to 2565, inclusive, Revised Statutes of 1925, fully cover the subject of city depositories, and, since the appointment of depositories was made, and form of the bond to be required from depository banks in the instant case was made and provided under the provisions of the city charter and its ordinances passed by virtue thereof, and since the provisions of such charter and ordinances relative to the questions involved here are inconsistent with the provisions of title 47, chapters 3 and 4, Revised Statutes of 1925, which embrace articles 2559 to 2569, inclusive, the bond in question is void and imposes no obligation on them as sureties.

The city of Galveston was incorporated by special charter enacted by the Legislature in 1903 (Sp. Acts 28th Leg., c. 37, Gammel's Laws, vol. 12), under which it now operates, and not under the provisions of the general statutes relative to the incorporation of cities.

It is well settled that a special law passed by the Legislature is not repealed by an act subsequently passed by another Legislature unless the first is expressly repealed by the subsequent act, or unless it is made clearly to appear from the subsequent act that it was the intended intention of the Legislature to repeal the first.

As we have already shown, the special act incorporating the city was passed in 1903, and the act upon which appellants rely as a repeal thereof, in so far as it relates to depositories, was passed in 1905, and there is nothing in the later act indicating that the Legislature intended to repeal the former. In other words, the general act relied on by appellants which makes provision for the selection of depositories by cities in general does not either by its terms or purposes manifest any intention to supplant the provisions in the existing special charter dealing with the control and management of the corporate funds and selection of depositories of particular cities. That the general act by its terms is made applicable to cities incorporated under special charters does not evidence a purpose to make it applicable to such cities having provisions in their special charters prescribing the manner of designating or selecting depositories for the city's funds. Andrews v. City of Beaumont, 51 Tex. Civ. App. 625, 113 S. W. 614; Paul v. State, 48 Tex. Civ. App. 25, 106 S. W. 448.

Since the proceedings shown to have been taken by the board in designating the bank of McCarthy as a depository were in strict accord with the provisions of the city charter, such proceedings followed the statutory law governing the matter, and the bond given is a valid statutory one, though it may contain obligations other than that required by the statute; the statutory obligation being separately and distinctly disconnected, expressed in such manner that the additional ones may be read out without destroying it. Farmers' State Bank v. Brazoria County (Tex. Civ. App.) 275 S. W. 1103; American Surety Co. v. Tarbutton (Tex. Civ. App.) 248 S. W. 435.

We adopt as our own the expression in appellee's brief, as follows:

"But should we be mistaken as to the applicability of the charter provisions instead of those of the general statutes, it is established law that these sureties can not now question the validity of the designation of their principal as a depository or the bond which they gave to secure deposits made under that designation and upon the faith of which the deposits of the public's money here involved were made. Board of County Com'rs of Hennepin County v. State Bank, 64 Minn. 180, 66 N. W. 143; State v. Citizens' Bank & Trust Co., 119 Ark. 617, 178 S. W. 929; Board of Com'rs of Meeker County v. Butler, 25 Minn. 363; Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468; National Surety Co. v. Leflore County (C. C. A.) 262 F. 325, 18 A. L. R. 269; Hidalgo County Water Imp. Dist. No. 2 v. San Juan State Bank & Trust Co. (Tex. Civ. App.) 280 S. W. 845; Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20; Western,

etc., Ins. Co. v. Board of Com'rs of Muskogee County, 60 Okl. 140, 159 P. 655, L. R. A. 1917B, 977; 18 Corpus Juris, p. 591, § 66. Consequently, we submit that the appellants can not now say that they were not bound by the bond as a statutory one exacted as it was under the terms of the City's charter.

"Should, however, it be determined that this bond can not be considered as a statutory one because the 1905 general statute required one of a different character and controlled the selection of depositories by this City and the nature of the bond to be required of them, nevertheless the appellants are liable on this bond as a common law obligation. The statute does not provide that a bond differing from the one therein prescribed shall be void. And it is clear that this bond was voluntarily given to obtain for the principal a privilege to which he was not entitled as a matter of legal right and the circumstances under which it was given and acted upon are such as to make it a perfect common law bond. Watkins v. Minter, 107 Tex. 428, 180 S. W. 227."

■ We overrule appellants' contentions that the bond was invalidated for want of a proper delivery after its execution, or because of any change therein by reason of the fact that the resolution, formerly attached to the bond of date June 2, 1925, was detached therefrom and attached to the one signed by them, or that it was invalidated by the passage of the resolution by the board of commissioners of date August 6, 1925, which we have hereinabove copied.

The undisputed evidence shows that the bond was in the hands of the city's secretary; that she took it from the files of her office and produced it upon the trial of this case; that it was handed to the secretary by S. L. (Sam) McCarthy; that at that time it had attached to it the resolution which had been formerly attached to the former bond; and that the two papers remained in the possession of the secretary from the date of their receipt by her until produced in court. In view of all the facts shown, the question as to whether or not the bond was properly delivered to the city was not an open one for the determination of a jury. The court properly found as a matter of law that it was delivered.

■ The bond itself, without reference to any paper, expresses the obligation assumed by appellants, with the sole exception that in the bond it was substantially stated that McCarthy was to pay interest in accordance with the stipulations set out in a paper of even date with the bond. It is clear from all the facts and circumstances in evidence that all the parties to the transaction understood what paper was referred to, and that it was referred to only for the purpose of fixing the rate of interest to be paid upon the daily balances. The obligation added by reason of the attached paper had no effect upon the obligation of the parties expressed in the bond itself, other than to supply the evidence of the rate of interest, as to which they had knowingly obligated themselves to be bound. Guerini Stone Co. v. Carlin Const. Co., 240 U. S. 264, 36 S. Ct. 300, 60 L. Ed. 636; Moreing v. Weber, 3 Cal. App. 14, 84 P. 220.

The reference in the bond to the instrument of even date therewith was evidently for the purpose of indicating what the rate of interest on daily balances should be.

■ The adoption of the resolution by the board of commissioners of date August 6, 1925, hereinbefore set out, did not invalidate the bond. The board was, by the provisions of the city charter, prohibited from authorizing the deposit of city funds under any agreement fixing the rate of interest at less than 3 per cent. Prior to the adoption of the resolution, McCarthy had executed a bond with appellants as sureties, whereby he had agreed to pay 4 per cent. on daily deposits. The board could not, if it undertook to do so, by the resolution reduce the rate of interest to be paid below the rate fixed by the charter. In Austin v. Freestone County (Tex. Civ. App.) 288 S. W. 870, it is held that contracts which attempt to exempt county depositories from payment of interest on any part of proceeds of sale of road bonds is void.

■ We are now brought to a consideration of the last contention made in the first proposition; that is, that the court erred in instructing a verdict in appellee's favor for the sums found by the verdict of the jury, because the evidence showed that the sums so found included moneys claimed to have been on hand, but which were not on hand prior to the execution of the bond signed by them.

It is insisted by appellants that the undisputed evidence showed that on August 1, 1925, the date on which the bond signed by them was executed, McCarthy was indebted to the city in the sum of more than $100,000, which he was unable to pay; that such sum was secured by the bond of date June 2, 1925, and not by the bond signed by them, and therefore they were not liable to the city for the payment of such sums by reason of the bond signed by them.

Appellants' contention cannot be sustained. The undisputed evidence showed that from August 1, 1925, the McCarthy bank was a going concern daily honoring as presented all vouchers or checks of the city against it as a depository until October, 1926, and that during such period it had paid out to the city amounts largely in excess of the funds of the city which it had on hand on August 1, 1925.

■ Another ground presented by appellants for a reversal of the judgment is that the court erred in instructing a verdict for the city for the full amount of the default of Ed. McCarthy, because included in such amount there were certain sums drawn from other depository banks, funds derived from

the sale of bonds issued by the city to be used in making certain public improvements, funds derived from state and county taxes appropriated by the state to the city to be used by it for public improvements, and funds belonging to the public schools of the city, insisting that the three funds last mentioned do not constitute revenue of the city and are not covered by the bond and that the first named is not covered by the bond, as the treasurer had no authority to transfer funds from one depository to another; therefore such transfer was unlawfully made and the funds so transferred were not covered by the bond.

As already shown, the bond sued on recites that *"Ed McCarthy, who carries on a banking business in the City of Galveston, Texas, under the name of Ed McCarthy & Co.*, having been * * * designated as one of the banks in which the Treasurer of the City *is directed and authorized to deposit sums of money received by him to his credit as treasurer of the City.* (Italics ours.)

The principal obligation assumed by the principal and sureties is stated in the bond as follows: "Said Ed McCarthy & Co. * * * will safely keep and truly account for and pay over any and all sums which may be *so deposited* with him on demand and as ordered by the Board of Commissioners of the said City. * * *"

It will be observed that it is recited in the bond signed by appellants that the treasurer was directed and authorized to deposit all sums of money coming into his hands as treasurer. Such sums to be deposited are not in the bond restricted to "revenues." The word "revenues" is not to be found in the bond. Appellants, however, contend that, by the resolution passed by the board of commissioners designating depositories, they authorized the treasurer to deposit with such depositories only "such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit as treasurer," and that funds derived from the sale of bonds of the city, and moneys appropriated by the state to be used by the city in making public improvements, and the school funds, in the hands of the city treasurer, as such treasurer, are not revenues of the city, and, as they were deposited in the McCarthy bank without authority, they were not covered by the bond. We think the phrase, "all sums of money received from all sources of revenue whatsoever," found in the resolution mentioned, should be given a meaning synonymous with that of "all moneys belonging to the city." Such construction would do no violence to the language used in the resolution referred to, and used by the Legislature in passing the special charter, under which the city is now operating.

In Bouvier's Law Dictionary revenue is thus defined: "The income of the government arising from taxation duties and the like;

and according to some correct lawyers under the idea of revenue is also included the proceeds of the sale of stocks, lands, and other property owned by the government."

In discussing the meaning of the word "revenue" in State v. Ewing, 22 Kan. 708, Justice Brewer said: "The word is" of broad and general meaning, "and includes all public moneys which the State collects and receives, from whatever source and in whatever manner."

In Donelson v. State, 3 Lea (71 Tenn.) 692, with reference to the question as to whether jail fees were there to be considered as revenue, it was said: "It is true [that] this is not one of the sources of revenue defined by the statute. Code [1858] § 538. Perhaps in its exact definition it may be confined to money raised by some of the modes of taxation, but in one sense all money belonging to the State is revenue."

Said Justice Swayne, in United States v. Norton, 91 U. S. 566, 23 L. Ed. 454:

"The lexical definition of the term revenue is very comprehensive. It is thus given by Webster: 'The income of a nation, derived from its taxes, duties, or other sources, for the payment of the national expenses.'

"The phrase *other sources* would include the proceeds of the public lands, *those arising from the sale of public securities,* [Italics ours] the receipts of the Patent office in excess of its expenditures, and those of the Post-office Department, when there should be such excess as there was for a time in the early history of the government."

See, also, Tutorship of Watson, 51 La. Ann. 1641, 26 So. 409.

■ The provisions of the city charter for selection of depositories and of the resolution passed by the board under their authority authorized the depositing in banks by the treasurer of all moneys belonging to the city and coming into his custody, and therefore the fact that he commingled the proceeds from the sale of bonds with other funds placed in the several depositories, or that he transferred such funds from one depository to another, is of no importance. It is, we think, clear that the proceeds from state taxes which the treasurer received from the state and county collector for the benefit of the city were in every sense funds belonging to the city. They were paid over to it under the law to be used in aiding it to meet sinking funds and interest requirements on its bonds issued by it for grade-raising purposes. That it was restricted to that particular use did not make it any the less money belonging to the city when received by it.

■ As to school fund: By article 2802, Revised Statutes of 1925, it is provided that in school districts, such as the Galveston district, the tax assessor and collector shall assess and collect the school taxes just as other city taxes are assessed and collected, and

by article 2801 it is provided that such school taxes when collected shall be paid over to the treasurer of the school board monthly.

It is manifest, we think, that by the provisions of article 2801 it was the purpose to have such funds placed first in the keeping of the city treasurer for the benefit of the city schools. By section 19(c) of the City Charter the collector of taxes is required to pay all moneys collected by him to the city treasurer. By article 2559, Revised Statutes of 1925, under chapter 3, relative to "city depositories", it is specially provided that the school funds, from whatever source derived, of incorporated cities, is a part of the city funds and that it is subject to the provisions of the charter. Under the provisions of the law as they now exist, it can hardly be held that the school funds were not covered by the bond in question. The funds placed with McCarthy were all obtained by him in his capacity as a designated depository of the city's funds; the bond was executed especially to secure repayment of those particular funds, and neither he nor his bondsmen can evade their repayment on any contention that such deposits ought not to have been made with him by the city.

In Geo. F. Simons v. Jackson County, 63 Tex. 428, it is held that the statutory bond required of a county treasurer (Revised Statutes [1879], art. 989) renders the sureties thereon liable for any misappropriation of the school fund, of any description, without reference to the source from which it might be derived. It includes all available school funds obtained from the state treasurer, as well as interest arising from bonds procured through the sale of the four leagues of land set aside to each county, and interest on notes given on their sale; that, if the county court, through error, appropriated permanent instead of available school funds, for school expenses and make the county treasurer their custodian, the sureties on his official bond would be liable for their safe-keeping; that the sureties on the official bond of a treasurer will be held liable for the safe-keeping of school money received by him as such though at the time of the execution of the bond its receipt by the treasurer may not have been contemplated by the parties.

▇▇ Appellant Tim Sullivan offered to testify that at the time he signed the bond he was induced to sign it by representations made to him by S. L. (Sam) McCarthy in his capacity as commissioner of finance and revenue of the city, immediately prior to his signing the bond, to the effect that the only liability under the bond would be for the repayment by Ed. McCarthy of such moneys as would come into his hands from the city treasurer that had been received by him of revenues of the city arising from city taxes, burial fees, waterworks, sewerage fees, and similar items, and that the total amount that would be placed in the McCarthy bank would not ex-

ceed the sum of approximately $20,000, that moneys coming into the hands of the treasurer and by him placed with McCarthy that arose from the sale of bonds would be kept in the United States National Bank, and that there would be no liability of the bondsmen as to such moneys arising from sources other than the ordinary revenues of the city, and that such representations were also made by Ed. McCarthy.

The city objected to the proffered testimony upon the grounds, first, that "the obligation which he signed is evidenced by the bond itself and that any representations that might have been made to him could not be introduced in evidence to vary the terms of that bond; further that the city of Galveston would not be bound by any representations of any persons made to those sureties as to the bond that he was asked to sign, and that there was no one authorized by the city of Galveston to procure the bond and that it was the act wholly of the principal in the bond and the sureties," which objection was by the court sustained. Appellants assign such action of the court as error.

We think the proffered testimony was properly rejected. The charter of the city and the resolution of the board of commissioners which were referred to in the bond put appellant on notice as to the character of obligation required of sureties on a bond such as he was executing, and further that the authority to make the deposits was vested in the treasurer and not in the commissioner of finance and revenue, and that consequently the latter neither by silence as to the representations of Ed. McCarthy nor by affirmative representations of his own could give to the bond any meaning as to the funds to be secured by it other than that its terms expressed, and further could not bind appellee by any promises as to what deposits should be made with McCarthy by the officers of the city authorized to control that matter.

▇▇ S. L. McCarthy, in seeking to secure Sullivan's signature to the bond, clearly was not acting as a representative of the appellee city, and the latter cannot be held bound by representations he made in his brother's behalf to secure the bond from Sullivan. American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977. Nor can his knowledge of such representations be under such circumstances imputed to the board. But, if it could, that knowledge on the board's part would not affect Sullivan's liability for the public's funds for the commissioners themselves could not bind appellee by misrepresentations of the character here involved. Burk v. Galveston County, 76 Tex. 267, 13 S. W. 455; Farmers' State Bank v. Brazoria County (Tex. Civ. App.) 275 S. W. 1103; City of Hallettsville v. Long, 11 Tex. Civ. App. 180, 32 S. W. 567.

It was not shown that the representations mentioned made by Ed. McCarthy or his

brother S. L. McCarthy, who was cashier of the McCarthy bank, was brought home to the board of city commissioners whose duty it was to accept and approve the bond, or to the city treasurer.

▮▮▮ Appellants contend, substantially, that the treasurer of the city without authority transferred certain funds from other depository banks to the McCarthy bank, and therefore such funds · so unlawfully transferred were not covered by the bond signed by them here sued upon.

Such contention cannot be sustained. Under the provisions of the city charter and the resolution of the board of city commissioners designating the depositories, the city treasurer was authorized "to make daily deposits of all sums of money as shall be received by him from all sources of revenue whatsoever" in any one or more of the designated depositories. The deposits made by the treasurer in the McCarthy bank were funds received by the city treasurer for the city. They were accepted by McCarthy as such. Under such circumstances, the sureties on the bond given to secure the repayment of such funds cannot escape liability to the city for the repayment of such deposits upon a contention that the treasurer had no authority to withdraw such funds from other depositories. Any lack of authority on the part of the treasurer in such transaction with the other depositories is no concern of appellants. That the treasurer may have done some unauthorized act in violation of restrictions which the law may have placed upon him for the protection of the city's interest would not affect appellants, as such restrictions were not made for their benefit. Gregg v. Hinkle, 29 N. M. 576, 224 P. 1025; Scotts Bluff County v. Bank, 115 Neb. 273, 212 N. W. 617; People of Sioux County v. Nat. Surety Co., 276 U. S. 238, 48 S. Ct. 239, 72 L. Ed. 547. What difference could it make to appellants whether the funds were placed with McCarthy before or after first being placed in some other depository?

▮▮▮ Appellants asked that David Fahey be made a party defendant that they might recover over against him judgment for any sum which might be adjudged against them, contending that he was a partner of McCarthy in the banking business and primarily liable for the amount sued for by the city. The court refused to allow Fahey to be made a party, and of such refusal appellants complained.

Appellants by the recitals in this bond denominated it as being that of themselves with Ed. McCarthy as their principal. They assert therein that David Fahey was a partner

of Ed. McCarthy, but nowhere did they allege —indeed, if they could have done,so in face of the recitals in the bond—that that instrument was given or accepted, or was in fact a partnership obligation of Fahey and McCarthy. Appellee objected to having brought into its suit on its obligation a cause of action entirely between appellants and Fahey and foreign to its suit, and the court sustained that objection. No authority which appellants cite, and none of which we are aware, goes so far as to hold that the lower court was compelled to deprive appellee of the trial of its suit unincumbered by another cause with issues foreign to appellee's cause and with which it had nothing to do, and that, in order to have determined appellant's legal liability to it, it must have that interwoven with a trial of issues between others which had no effect upon its own case.

▮▮▮Complaint is made by appellants to the action of the court in dismissing R. Lee Kempner from the suit. There is no merit in appellants' complaint. The only proposition of appellants wherein complaint is made of the action of the court in dismissing R. Lee Kempner from the case is as follows: "The court erred in dismissing R. Lee Kempner. The court erred in dismissing David Fahey, to which exceptions were properly taken."

On page 2 of appellants' brief, it is stated: "Defendant Sullivan by cross bill sought to recover from and of R. Lee Kempner on the ground that he received monies as City treasurer and had so intermingled and commingled the funds, as hereinafter explained, that it was impossible to determine what portion, if any, of such funds constituted revenues of the City."

This is the only portion of appellants' brief which in any way indicates any theory upon which it is claimed that the judgment of the court below is erroneous as to the appellee, R. Lee Kempner, and, if it were true that such moneys had been so commingled, the farthest that this could go would be to relieve the sureties on McCarthy's depository bond, and it could not give them any right of action against the treasurer as an individual.

We have examined and overruled, as being without merit, the remainder of appellants' propositions which we have not severally discussed.

Having reached the conclusions hereinabove expressed, it becomes our duty to affirm the judgment, and it is accordingly so ordered.

Affirmed.