## SULLIVAN et al. v. CITY OF GALVESTON.
### No. 1358–5500.

Commission of Appeals of Texas, Section A.
Feb. 4, 1931.

Maco Stewart, of Galveston, Albert J. De Lange, of Houston, and Lockhart, Hughes & Lockhart, of Galveston, for plaintiffs in error.

Bryan F. Williams, City Atty., and H. C. Hughes, Frank S. Anderson, Mart H. Royston, Paul A. Drouilhet, and Terry, Cavin &

Mills, all of Galveston, for defendant in error.

HARVEY, P. J.

In this suit the city of Galveston recovered judgment for approximately a quarter of a million dollars against the plaintiffs in error, Tim Sullivan and D. W. Kempner, as sureties on the bond of Ed McCarthy & Co., as city depository. The judgment of the trial court was affirmed by the Court of Civil Appeals. 17 S.W.(2d) 478.

The material facts, so far as needed to be stated here, are substantially as follows:

The city is operating under a special charter granted to it in the year 1903, as a city of 5,000 or more. The governing body of the city, as provided in the charter, is a board of commissioners consisting of four commissioners, with the mayor as president of the board. Section 19b of the city charter reads as follows:

"19b. The Treasurer shall give bond in such amount and in such form as may be required by the said Board in a sum not less than $100,000.00 and with two or more good and sufficient sureties to be approved by the President of the Board and the Commissioner of Finance and Revenue, said bond to be conditioned for the faithful discharge of his duties. It shall be his duty to receive, and keep as herein provided all money belonging to said City and to pay out the same only on warrants drawn by the auditor and signed by the President of said Board, and countersigned by the Commissioner of Finance and Revenue under the seal of said Board and not otherwise. All moneys belonging to said city and received by any officer or agent thereof, either from collections, fines or any source whatsoever, shall be by him deposited with the said Treasurer daily. For all moneys received, the Treasurer shall give duplicate receipts in all cases, one to the party paying the said money into the treasury and one for the auditor. All persons charged with the collection of any money under this act or ordinance passed in pursuance thereof shall promptly pay the same over to the Treasurer, under such penalty as may be prescribed by ordinance, and shall forthwith hand the Treasurer's receipt to the auditor, who shall countersign the original receipt and retain the duplicate; and the party paying shall then hold said original receipt.

"Said Treasurer shall render a full and correct statement of his receipts and payments to the Board of Commissioners at the first regular meeting of the Board of Commissioners in each month, and whensoever at other times he may be required by any member of said Board so to do.

"The Board of Commissioners shall have the right to require of the Treasurer a new bond whenever in their opinion the existing bond is insufficient and whenever such new bond is required he shall perform no official act until said bond shall be given and approved in the manner aforesaid.

"The said Treasurer shall make daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit as Treasurer of said City in one or more banks situated in said City to be selected by said Board of Commissioners, and any such bank, before any such deposit is made therein, shall be required to enter into an obligation with the said Board of Commissioners to pay into the treasury of such City interest at a rate to be fixed by said Board of Commissioners and which rate may be changed in the same manner, such rate not to be less than three (3) per centum per annum, which said interest shall be payable at the end of each month on the average daily balances for the month. The said bank shall also execute a good and sufficient bond, with sureties to be approved by the said Board of Commissioners, and conditioned that such bank will safely keep and account for and pay over said money on demand and as ordered by the Board of Commissioners. The said Board of Commissioners in the selection of any such depositary bank shall take into consideration the reputation and solvency thereof, and the sufficiency of the security offered by such bank. All interest paid by any such bank upon such balances shall be collected by the Treasurer of said City, and shall be by him reported in his next statement following such collections, and shall be considered and treated as part of the general fund of such city, subject to use for any legitimate municipal purpose.

"And said Treasurer shall do and perform such other acts as such Board of Commissioners may require of him, and for all such services he shall receive such salary as may be fixed by the Board, not exceeding the sum of twelve hundred ($1,200) dollars per annum, payable in equal monthly installments."

Section 19c reads partly as follows:

"19c. * * * Said Assessor and Collector shall also collect all taxes levied by this Act, including any tax levied for public schools and in the event of non-payment he shall proceed in accordance with the provisions of the laws of the State governing the collection of taxes, and shall have the right to employ such remedies to enforce such collection as are provided by the laws of the State for the collection of taxes levied for State and County purposes."

Then follow provisions prescribing the bond to be required of this officer, after which the section continues:

"He shall daily pay over to the Treasurer all moneys by him collected and shall report to the said Board of Commissioners at the first meeting of that body in every month a

full statement of all moneys so collected and paid over by him. * * *"

There are to be found in the city's charter no other provisions whatever relative to the keeping of the city's funds by the treasurer or any other officer.

On June 4, 1925, the board, in pursuance of provisions contained in section 19b of the charter, passed the following resolution:

" 'Resolved, That until this Board shall hereafter otherwise direct, there shall be and are hereby designated by this Board as Banks in the City of Galveston which the Treasurer is authorized and directed to make daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever to his credit as Treasurer of said City the following banks: The First National Bank of Galveston, W. L. Moody & Co., City National Bank, South Texas National Bank, United States National Bank and Ed McCarthy & Co., and that the rate of interest which the said banks shall pay on such deposits is hereby fixed at four per cent. per annum which shall be payable at the end of each month to the City Treasurer, and shall be based on the average daily balances for the month, and that the City Treasurer shall not make any deposit of any such funds in any of the aforesaid banks until it has entered into an obligation with this Board to pay to the Treasurer of the City interest at the aforesaid rate and shall have furnished good and sufficient surety satisfactory to this Board, conditioned that such bank will safely keep and account for and pay over said money on demand and as ordered by the Board of Commissioners.' "

. McCarthy & Co. at once gave the required bond, with R. L. Kempner and another as sureties. This bond bears date June 2, 1925, and there was attached thereto a written obligation of McCarthy & Co. to pay interest at the rate of 4 per cent. as required by the above resolution. This latter instrument bore no date. As soon as the bond was accepted by the city, McCarthy & Co. proceeded to act as a city depository. At that time Robert I. Cohen was city treasurer, but a few weeks later R. L. Kempner was appointed to said office. Thereupon the following bond, being the one sued on herein, was presented by McCarthy & Co. to the board, and was accepted by the board on July 30, 1925, to wit:

"Ed McCarthy, who carries on a banking business in the City of Galveston, Texas, under the name of Ed McCarthy & Co., having been by the Board of Commissioners designated as one of the banks in which the Treasurer of the City is directed and authorized to deposit sums of money received by him to his credit as Treasurer of the said City, we, the said Ed McCarthy, as principal, and D. W. Kempner and Tim Sullivan, as sureties, do hereby covenant with the said City

of Galveston, Texas, that the said Ed McCarthy & Co. will pay interest on all such monies as may be deposited with him at the rate stipulated in his written obligation of even date herewith, and will safely keep and truly account for and pay over any and all sums which may be so deposited with him on demand and as ordered by the Board of Commissioners of the City of Galveston. And we do jointly and severally bind ourselves, our heirs, executors and administrators to indemnify and reimburse the said City of Galveston, Texas, for any and all loss, damage, cost or expense which may arise or flow from the failure of the said Ed McCarthy & Co. to safely keep or to promptly pay on demand and as ordered by the Board of Commissioners of the City of Galveston any funds which may be deposited with him by the Treasurer of the said City, or any interest accrued upon the same.

"In Witness Whereof we have subscribed our names hereto on this the 29th day of July, 1925,

"Ed McCarthy & Co., by Ed McCarthy,
    "Principal.
"D. W. Kempner
"Tim Sullivan,
    "Sureties."

At the time the above bond was executed and accepted. there was not in existence any "written obligation" of McCarthy & Co. which bore "even date" with the bond, in respect of the rate of interest to be paid on city deposits, and no such instrument ever existed. The following letter of McCarthy & Co. accompanied the bond, when it was presented for acceptance:

"To the Board of Commissioners of the City of Galveston.
"Gentlemen:

"Owing to the fact that Mr. R. Lee Kempner, one of the sureties on the bond dated June 2nd, 1925, given by the undersigned as one of the banks designated as a depositary for City funds has been appointed City Treasurer, the undersigned herewith tenders a new bond in like terms with D. W. Kempner and Tim Sullivan sureties thereon, with the request that the same be approved and accepted in lieu of the previous bond.

"Ed McCarthy & Co., by Ed McCarthy."

On August 1, 1925, R. L. Kempner qualified as city treasurer. On this date there was an aggregate credit balance of approximately $183,000, shown on the books of the McCarthy bank in the name of Cohen, as city treasurer, on account of city moneys previously deposited in the bank by him as city treasurer. Cohen on the last-mentioned date drew checks on the bank in favor of R. L. Kempner, city treasurer, for the amount of the above balance. The checks were thereupon deposited in the bank by R. L. Kempner, and the bank

charged them against the account of Cohen, city treasurer, and credited them to R. L. Kempner as city treasurer. No money actually passed from Cohen to R. L. Kempner. There was not in the bank, at the time this transaction occurred, as much as $183,000 in money. In fact, the bank's liabilities far exceeded its assets, and this condition continued until the bank closed its doors in September, 1926. After Kempner became city treasurer there was deposited in the bank, to his credit as treasurer, from time to time until the bank closed. numerous sums; and when the bank closed there was a balance of approximately a quarter of a million dollars to his credit, as city treasurer. The deposits resulting in this balance, for which the trial court rendered judgment herein, were moneys derived from the following sources: (1) From city taxes, license fees, fines, etc; (2) from the sale of city bonds; (3) from taxes levied and collected by the city for the independent school district of Galveston; and (4) from state taxes assessed and collected by the city for the purpose of paying the grade raising bonds of the city which taxes had been donated by the state to the city, in trust, to be applied by the city to the payment of said bonds. See Gen. Laws Regular Session of 1925, chapter 3.

■ The plaintiffs in error contend that those provisions of section 19b of the city charter, which relate to the selection of city depositories, and prescribe the bond to be given, are void because in conflict with the provisions of chapter 3, title 44, of the Statutes of 1911 (articles 2454–2460). We find it unnecessary to consider whether these charter provisions are void or not. For even though they be void, the bond sued on is nevertheless valid as a common-law bond.

■ The plaintiffs in error further contend that in no event does their liability on the bond extend beyond such city funds deposited in the McCarthy bank as were derived from sources of "revenue," according to the strict sense of the term, such as taxes, license fees, fines, and such like. It is quite true that the covenants of the bond, when that instrument is construed together with the resolution of the board, relate only to deposits of "such sums of money as shall be received by him (the city treasurer) from all sources of revenue whatsoever." But when the bond is construed in connection, not only with the resolution, but also with all the provisions of section 19b of the city charter, in contemplation of which the bond manifestly was in fact given, all doubt, as to what money was meant, disappears. All deposits of money belonging to the city was meant.

■ The further contention is made that the money derived from state taxes, which was to be used in paying off the city's grade raising bonds, was not the city's money, and therefore was not covered by the bond. The contention is overruled. The city held the beneficial rights in the money, as well as being the lawful possessor thereof. The city was the real owner of the money, notwithstanding its use by the city was restricted by law to a particular debt of the city.

■ The school money deposited in the McCarthy bank by the treasurer belonged to the city, at least for the time being. The city treasurer was the lawful custodian of this money. We adopt the reasoning, in this respect, of the able counsel for the city, as follows:

"Article 2802 of the Revised Statutes of 1925, required the school taxes levied by the city to be collected by its tax collector as other taxes were collected, and article 2801 required the school taxes to be paid over to the treasurer of the school board monthly, thus contemplating that, pending the monthly payments to the school Board's treasurer, the school taxes should be in the legal custody of some officer of the city. The city charter required the collector to pay all money, by him collected, over to the city treasurer; thus making the latter the lawful custodian of the collected school taxes before their payment over to the treasurer of the school board. No provision is made for any separate depository for these funds during the time they are being held by the City Treasurer pending the monthly settlements. The evidence shows that he promptly made monthly payments to the Treasurer of the school board, as the law required, and there is nothing to indicate that any part of the deposits in the McCarthy bank came from funds which should have been, but had not been, paid over to the school board's treasurer."

■ Another contention of the plaintiffs in error relates to one of the provisions of the bond which reads: "That said McCarthy & Co. will pay interest on all moneys deposited with him, at the rate stipulated in his written obligation of even date herewith." It is contended that because no such "written obligation" ever existed, the contract of the sureties remained incomplete and, therefore, never became effective. The contention is overruled. There is no language contained in the bond which reasonably implies an intention on the part of the signers to require, as a prerequisite to liability on the bond, that the rate of interest be stipulated in a "written obligation" of McCarthy & Co. "of even date" with the bond. Clearly this clause was inserted in the bond merely as a reference for ascertaining the rate of interest contemplated by the parties. And since such rate of interest can be otherwise ascertained, the fact that the reference was made to a written instrument which did not exist becomes immaterial. The important inquiry is: What rate

of interest was in the contemplation of the parties? This question is definitely answered by the resolution of the board, in pursuance of which the bond was given. It is hardly reasonable to suppose that the signers contemplated a different rate of interest from that specified in the resolution. For in order to indulge such a supposition, a useless purpose in signing the bond. must be imputed to the signers.

■■ The plaintiffs in error advance the proposition that they are not liable for any defaults of the McCarthy bank which occurred prior to the execution of the bond sued on. As an abstract proposition this is correct; but it finds no place in this case. The credit of $183,000 which stood on the bank's books, in favor of the city, at the time the bond sued on was executed, simply represented a debt which the bank owed the city. Up to September, 1926, when the bank closed, the bank met all demands of the city, by cashing all city checks as they were presented. Meantime the bank had become indebted to the city through further deposits of money belonging to the city. The aggregate amount of payments made by the bank, after the bond sued on was executed, far exceeds the prior debt of $183,000. In the absence of an application of these payments, by either the city or the bank, the law applies them to the prior debt, to the extent necessary to satisfy same. In rendering judgment against the plaintiffs in error for the balance due by the bank to the city, the trial court, in effect, made such application and treated the prior debt as paid. The judgment does not charge the plaintiffs in error with any part of such prior debt.

■ The plaintiffs in error further contend that the obligations of the contract secured by the bond have been altered without their consent, and for this reason, they say, they stand released from the bond. The facts upon which this contention is based are these: After this bond was given, the board of commissioners passed a resolution which, in effect, provided that the McCarthy bank would not be required to pay any interest on a portion of the city deposits, not exceeding $20,000, which was carried on the bank's books in a separate account. Against this account all checks issued by the city in payment of current expenses, such as salaries of city officers, wages of city employees, and similar items, were drawn by the city. The purported interest rebatement, as to this account, was made by the city, according to the recitals of the resolution granting the rebate, because of the great volume of detail work devolving on the bank in cashing the great number of checks being constantly drawn by the city against said account. This transaction did not work a change in the obligations of the contract secured by the bond. There was no binding contract to the effect that the bank should not remain legally liable for interest on the amount referred to. In the transaction, the bank parted with no consideration, and the city received none. The bank was already bound, under its contract as a city depository, to perform all the detail work incident to the cashing of the checks of the city. The indulgence voluntarily granted by the city to the bank, in this respect, did not work injury to the sureties on the bond or discharge the legal obligation of the bank to pay interest as provided by the contract under which the bank became a city depository. Notwithstanding this indulgence, the bank remained legally bound to pay interest in accordance with the terms of said contract.

■ In due season, the plaintiffs in error impleaded one David Fahey, as a party to this suit. They alleged that Fahey was a partner of Ed McCarthy in the banking business of Ed McCarthy & Co., and sought to recover judgment over against Fahey, as such partner. The city excepted to Fahey being made party to the suit, which exception was sustained by the trial court and Fahey was dismissed. The plaintiffs in error complain of this action of the trial court. If there be error in this respect, it has become harmless. It has been properly made to appear that, since the trial of this case in the court below, the United States District Court for the Southern District of Texas has duly found and adjudged Fahey to be a bankrupt, and that he was a partner in the firm of Ed McCarthy & Co.; and that said court has duly appointed a trustee in bankruptcy for said partnership estate and the respective estates of the individual partners. The following facts have also been properly shown: The trustee has duly qualified and is now acting. The said judgment of the United States District Court has been affirmed by the United States Circuit Court of Appeals, and the writ of certiorari has been denied by the Supreme Court of the United States. For a report of the decisions of these respective courts, see (D. C.) 26 F.(2d) 382; (C. C. A.) 30 F.(2d) 330; 279 U. S. 871, 49 S. Ct. 512, 73 L. Ed. 1007. The city of Galveston has filed in the above bankruptcy proceedings the claim upon which this suit is founded, and same has been duly allowed in full as a valid claim against the partnership.

In view of the above facts, we do not think that the ends of justice require a reversal of the trial court's judgment, on account of the dismissal of Fahey from this suit, even though such dismissal were erroneous. The plaintiffs in error have suffered no substantial injury because of such dismissal. Redress still is available to them in said bankruptcy proceedings (Williams v. Fidelity Co.,

236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713), as well as elsewhere (Boynton v. Ball, 121 U. S. 457, 7 S. Ct. 981, 30 L. Ed. 985).

Although all the assignments contained in the application for writ of error have been duly considered, no reversible error is found. We therefore recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.