**KUCK et al. v. DE WITT COUNTY et al.**
No. 1466—5703.

Commission of Appeals of Texas, Section A.
June 10, 1931.

H. W. Wallace, of Cuero, and Durell Miller, of Yoakum, for plaintiffs in error.

Proctor, Vandenberge, Crain & Mitchell, of Victoria, and Crain & Hartman and T. A. Graves, all of Cuero, for defendants in error.

CRITZ, J.

It seems from the record of this case that in February, 1927, the commissioners' court of De Witt county, Tex., selected the First State Bank of Westhoff, in such county, as its general depository for all funds of the county, except its school funds, as provided and required by article 2544, et seq. R. C. S. of Texas, 1925. The bond of such bank was fixed at $249,900. On March 16, 1927, the bond of the above bank was duly approved by the commissioners' court. It was also approved by the state comptroller on March 24, 1927. This bond was signed by the bank as principal and by L. A. Walker, Philip Welhausen, M. C. Driscoll, B. H. Traybig, D. J. Shall, G. A. Lowrence, and K. F. Carson as sureties. This bond was executed under the provisions of article 2547, R. C. S. of Texas, 1925, as a general county depository bond.

Later, on January 5, 1928, the above bank filed with the county another bond in the principal sum of $100,000. This bond was approved by the county on the same date. It was never approved by the state comptroller. So far as shown by the record, there was no order entered in the minutes of the commissioners' court requiring this second bond, and there is no record as to when, how, or why it was required, except the statements contained in the bond itself, and the order ap-

proving same. The material parts of the second bond read as follows:

"The conditions of the foregoing obligation are such that whereas the above bound principal, First State Bank of Westhoff, Westhoff, Texas, is the duly authorized, bonded and acting County Depository, and further security has been required of said Bank as such Depository, to cover additional moneys, contemplated to be deposited with said Bank.

"Now, therefore, if the above bounded First State Bank of Westhoff, Texas, shall faithfully do and perform all the duties and obligations devolving on it by law as the county depository of DeWitt County, and shall upon presentation, pay checks drawn on it by the County Treasurer of DeWitt County, Texas, shall faithfully keep and account for all funds belonging to the county which are deposited with it and all other funds deposited with it under the requirements of Chapter II, Acts of the Thirty-fifth Legislature passed at its Regular Session, and shall pay the interest at the time and at the rate hereinabove stipulated; and shall at the expiration of the term for which it has been chosen turn over to its successor all the funds, property, and other things of value coming into its hands as such depository, then and in that event this obligation is to be and become null and void, otherwise to remain in full force and effect."

The order of the commissioners' court approving the above second bond is dated January 5, 1928, and according to the record, is, in substance, as follows: " * * * It is ordered by the Court that the bond of The First State Bank of Westhoff be approved, said bond is additional to the original bond filed and is to cover additional amounts on deposit in the bank, and to be deposited in the bank during the current year, from the sale of district road bonds and from any other sources."

This second bond was signed by the bank as principal and by Philip Welhausen, M. C. Driscoll, E. Hagens, L. A. Walker, E. Hertz, E. H. Gerdes, Louis Poth, and Eilert Kuck, and D. J. Shall.

It will be noted that some of the sureties on both bonds are the same. Also it seems that Hertz, a surety only on the second bond, was sued, but dismissed from the case on account of bankruptcy.

At the time the new bond was executed, the various funds of the county on deposit in the depository bank amounted to $252,-932.22. We are not apprised by the record what these funds consisted of. At the time the bank failed, and was taken over by the banking department for liquidation, there was on deposit in the various county and district funds the sum of $153,584.05. Of this sum $54,573.70 belonged to the county as a whole, and the balance belonged, in various sums, to the road districts Nos. 1, 2, 3, 4, 5, 7, and 8, and drainage district No. 1. From the foregoing it will be observed that at the time the new bond was filed and approved, the county had on deposit with the depository bank a sum in excess of its general depository bond in the amount of $3,032.22. Also it is shown by the undisputed record and the opinion of the Court of Civil Appeals that between the date of the approval of the new bond and the closing of the depository bank, the county deposited in the bank further sums amounting to about $266,000, and withdrew funds amounting to $366,000, thus resulting in a net reduction of the amount on deposit at the time the bank closed of about $100,000. That is to say, the county had on deposit in the bank at the time it closed about $100,000 less than it had on deposit when the new bond was given. Also, it is conclusively shown that the funds were all deposited at all times in one general county account, and were never allocated in the bank to any special county or district fund.

On final trial in the district court, the county recovered judgment as follows:

(a) Against the bank as principal, and James Shaw as banking commissioner, and against Philip Welhausen, L. A. Walker, M. C. Driscoll, B. H. Traybig, D. J. Shall, G. A. Lowrence, K. F. Carson, E. Hagens, E. H. Gerdes, Louis Poth, and Eilert Kuck, as sureties, for $100,000. This judgment made proper safeguards with reference to the liability of the banking commissioner in his official capacity.

(b) Against the bank as principal, and the banking commissioner, and also against Philip Welhausen, L. A. Walker, M. C. Driscoll, B. H. Traybig, D. J. Shall, G. A. Lowrence, and K. F. Carson, as sureties, for $53,-584.05. This part of the judgment also properly safeguards the judgment against the banking commissioner.

The above judgment was affirmed by the Court of Civil Appeals. 23 S.W.(2d) 411.

As we interpret the above judgment, its result is that all sureties who signed both bonds were held for the entire sum the county had in the bank when it closed, while those who signed the second bond only, were only held to the extent of the second bond. In other words, the trial court held all sureties who signed both bonds up to $100,000, and held the sureties on the first bond for the additional sum of $53,584.05, the balance due by the bank to the county. We here call attention to the fact that the Court of Civil Appeals inadvertently says: "Judgment was rendered, upon a trial before the court without a jury, in favor of the county against the principal for all of said amounts, and against the sureties upon the second bond for $100,-000, the amount thereof, and against the sure-

ties on the original bond for the balance of $53,000."

A reading of the opinion of the Court of Civil Appeals discloses that the effect of its ruling is to hold that the new $100,000 bond is not, strictly speaking, a statutory bond at all, but additional security taken by the county to secure all of its deposits in the depository bank. In this connection, the Court of Civil Appeals holds that the mere fact that the law prescribes certain methods by which county depositories shall secure county funds does not, as a matter of law, make a contract between the county and the bank, which secures the county deposits in a manner other than that prescribed by law, unenforceable between the parties.

The plaintiffs in error, who are the sureties on the second bond, who did not sign the first bond, contend that the second bond, construed in the light of the undisputed record, discloses as a matter of law, that the second bond was given under the provisions of article 2548, R. C. S. of Texas, 1925, as a bond to cover special deposits, and since there is no evidence to show that any loss occurred to the county which was a special deposit, and thus protected by such second bond, the judgment of the two lower courts cannot stand.

In order to determine this question, we must first interpret and construe the various depository statutes involved.

Articles 2544 to 2546, inclusive, R. C. S. 1925, relate to various steps prescribing the selection of county depositories. It is not necessary to further notice these statutes.

Article 2547, as amended by Acts 40th Leg. (1927) c. 129, § 1 (Vernon's Ann. Civ. St. art. 2547, note) in minute detail, prescribes the general bond or bonds, or other security to be furnished to the county by the depository selected under the provisions of the preceding articles. This last-named article prescribes the form, conditions, and amount of the general depository bond. Also, it, in great detail, prescribes the security required, in case the bond is signed by personal sureties. This article also provides for the giving of a surety bond. It also expressly authorizes more than one general bond. It prescribes the conditions of the general bond as follows: " * * * The condition of the bond or bonds, or contract for securities pledged shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon such depository, and for the payment upon presentation of all checks drawn upon said depository by the county treasurer of the county and that said county funds shall be faithfully kept by said depository and accounted for according to law. Any suits arising thereon shall be tried in the county for which such depository is selected."

The other provisions of this article are not material here.

We deem it advisable to copy article 2548 into this opinion. It is as follows: "Whenever, after the creation of a county depository, as by this chapter provided, there shall accrue to the county or any subdivision thereof, any funds or moneys from the sale of bonds or otherwise, the commissioners court of such county at its first meeting after such special funds shall have come into the treasury, or depository of such county, or so soon thereafter as may be practicable, may make written demand upon the duly accredited and established depository of the county for a special additional bond as such depository in a sum equal to the whole amount of such special fund, to be kept in force so long as such fund remains in such depository. Such extra or special bond may be canceled and a new bond contemporaneously substituted therefor as such special fund may have been reduced. Such special bond shall at all times be sufficient in amount to cover such special fund then on hand. Upon the failure of such depository to furnish such additional bond within thirty days from the date of such demand, the commissioners court may cause such special funds to be withdrawn upon the drafts of the county treasurer from such depository, and cause the same to be deposited in some solvent national bank or State bank whose combined capital stock and surplus is in excess of such special fund, and to leave the same or so much thereof as may not have been expended with such national bank or State bank of last deposit, until such time that such county depository may have filed with the commissioners court the required additional bond, when such special fund or so much thereof as shall not have been expended shall be forthwith returned to and deposited with such county depository. The requiring of such additional or special bond shall be optional with such commissioners court. When a banking institution selected, qualified and acting as a county depository shall become insolvent and it shall become necessary to resort to the depository bond or bonds to collect the county and State funds deposited therein, payment shall be made to the county and State pro rata."

Article 2556 relates to the giving of a new general depository bond. It is as follows: "If the commissioners court shall at any time deem it necessary for the protection of the county, it may require any depository to execute a new bond; and, if said new bond be not filed within five days from the time of the service of a copy of said order upon said depository, the commissioners court may proceed to the selection of another depository in the manner provided for the selection of a depository at the regular time for such selection."

We shall now proceed to determine by process of elimination, which, if any, of the

above statutes the second bond was given under.

█ It is too plain for argument that it was not furnished or intended to be furnished under article 2556. It is for only $100,000; it shows upon its face that it was not intended as an entirely new general depository bond filed to take the place of the original bond, for it expressly states that it is given as further security. It is therefore plainly evident that it was not given as a new bond, as contemplated by article 2556.

█ We think it is equally plain that this bond was not given or intended to be given under the provisions of article 2548. This article, by its very plain and simple terms, provides for the giving of a special bond to secure some special fund or deposit. This statute undoubtedly contemplates that the bond therein provided for is intended to secure a special and designated fund. This appears because the statute provides that the county has the right to make written demand on the county depository for a special additional bond in a sum equal to the whole amount of such special fund to be secured thereby, and that it is to be kept in force only so long as such special fund remains in the depository. The statute then proceeds to use other language that demonstrates that the bond contemplated thereby is special, and that the fund secured thereby has to be designated in some manner so as to adequately identify it. In this connection, we call attention to the fact that this statute provides for reducing the bond as the special fund is expended.

When we come to examine the instant bond in the light of the record, we are unable to escape the conclusion that the trial court was justified in finding that it was not given under article 2548, supra. There is no order requiring this bond, or designating any special fund or funds to be secured thereby. The bond itself recites the fact that the depository bank has been required to furnish further security to cover additional moneys contemplated to be deposited in the bank, but absolutely fails to, in any manner, designate or identify such additional moneys or funds as special deposits to be secured under the bond required and defined by article 2548. The bond then proceeds in sweeping language to bind the sureties to the obligation that the bank will faithfully do and perform all the duties and obligations devolving upon it by law, as the general county depository of De Witt county. In other words, the bond in every detail complies with the requirement of the statute with reference to general depository bonds, except it is not approved by the comptroller. It is, therefore, plainly evident that this bond was not given under article 2548.

█ We now come to consider whether this bond was given under article 2547.

An examination of the terms of the bond discloses that it, by its express provisions, covers and protects no special fund, but every kind and character of county deposit; it guarantees the performance of every lawful duty incumbered upon a general county depository; and it plainly shows upon its face that it is not intended to take the place of the original bond, but is in addition thereto. Furthermore, article 2547 expressly makes provision for more than one bond by providing "(a) by executing and filing with the Commissioners Court a bond or bonds," etc. There is absolutely nothing in this record that will militate against a finding that this bond was given in compliance with article 2547, except that it was not approved by the comptroller. We think such a fact would be no defense to the liability of the sureties thereon for county funds.

Finally even should it be held that this bond was not given under article 2547, which holding would necessarily result in the conclusion that it was given without express statutory authority, still it would be a good common-law obligation to protect and secure all deposits of the county in the depository bank, and to protect the county by requiring the bank to obey every detail of the law, as applied to general county depositories. Sullivan v. City of Galveston (Tex. Com. App.) 34 S.W.(2d) 808.

█ It follows that whether this bond was given under article 2547, or given without any express statutory authority, it covers and protects all county deposits.

We recommend that the judgments of the Court of Civil Appeals and the district court be both affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.