ACCEPTED
12-14-00262-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/10/2015 3:09:49 PM
CATHY LUSK
CLERK

# No. 12-14-00262-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/10/2015 3:09:49 PM
~~CATHY S. LUSK~~
Clerk

IN THE
TWELFTH COURT OF APPEALS
TYLER, TEXAS

**Charles and Mary Lou Alford,**
*Appellants,*

*v.*

**Robert Thomas McKeithen; EOG Resources, Inc.;
and Central Texas Land Services,**
*Appellees.*

Appealed from the District Court
of San Augustine County, Texas

**Appellee's Brief
of EOG and Central Texas Land Services**

Jason R. Mills
Bar No. 24041494
Graham K. Simms
Bar No. 24060610
Joshua C. Ashley
Bar No. 24078161
**FREEMAN MILLS PC**
110 N. College, Ste. 1400
Tyler, Texas 75702
903.592.7755 *phone*
903.592.7787 *fax*
*jmills@freemanmillspc.com*
*gsimms@freemanmillspc.com*
*jashley@freemanmillspc.com*

**ORAL ARGUMENT
CONDITIONALLY REQUESTED**

---

## PARTIES & COUNSEL

*Appellant:* Charles and Mary Lou Alford

*Appellant's Counsel:*
*(trial & appellate)*

Tom Rorie
ATTORNEY AT LAW
210 North Street
Nacogdoches, Texas 75961
936.559.1188 *phone*
936.559.0099 *fax*

---

*Appellee:* Robert Thomas McKeithen

*Appellee's Counsel:*
*(trial & appellate)*

Noel D. Cooper
LAW OFFICES OF NOEL D. COOPER
117 North Street, Ste. 2
Nacogdoches, Texas 75961
936.564.9000 *phone*
936.715.6022 *fax*

Bill McWhorter
BILL McWHORTER & ASSOCIATES
119 North Street, Ste. A
Nacogdoches, Texas 75961–5200
936.564.2676 *phone*
936.564.6455 *fax*

*Appellee:* EOG Resources, Inc.
Central Texas Land Services

*Appellees' Counsel:*
*(trial & appellate)*

Jason R. Mills
Graham K. Simms
Joshua C. Ashley
FREEMAN MILLS PC
110 North College, Ste. 1400
Tyler, Texas 75702
903.592.7755 *phone*
936.592.7787 *fax*

# CONTENTS

Parties & Counsel ................................................................ ii

Contents ........................................................................ iii

Authorities ....................................................................... v

Statement Regarding Oral Argument ........................................ viii

Issues .......................................................................... ix

Introduction ................................................................... 1

Facts .......................................................................... 2

    A. In 2003, the Alfords bought the Jessups' pasture and home site. ......... 2

    B. No one mentioned minerals in the handshake deal. ........................... 2

    C. The deed the Alfords were shown at closing contains a mineral reservation in Exhibit A, but the Alfords did not read it. ..................... 3

    D. The Alfords sue nearly a decade later, seeking title through the interpretation of the deed. ................................................ 3

    E. The trial court rules that the deed is ambiguous, and the jury finds that the Alfords do not have title to the minerals and are not entitled to reformation. ....................................................... 4

Summary of the Argument ..................................................... 4

Argument ....................................................................... 6

    A. The trial court rightly held that the Alfords' deed is ambiguous. ......... 7

        1. *A deed is ambiguous when its meaning is uncertain and doubtful, or when the deed is reasonably susceptible to more than one meaning.* ......... 7

        2. *The Alfords' deed is ambiguous because the effect of the mineral reservation is at best unclear and there are two reasonable interpretations of the deed.* ................................................ 10

            a. Because the Alfords and the Jessups did not discuss minerals when negotiating the deed, the deed's circumstances do not affect the ambiguity analysis. ........................................ 10

            b. The effect of the mineral reservation in the deed is at best unclear, and there are two reasonable interpretations of the deed. ..................................................................... 10

      i.  The Alfords' deed should not be construed against the grantors because both parties had an equal opportunity to control the contents of the deed and the Alfords admit that they did not read the whole deed before signing. ........................ 13

      ii. The Alfords' nonbinding cases on incorporation by reference do not render EOG's interpretation of the deed unreasonable.............................................................................. 16

  B.  The Alfords' attempt to seek title through the interpretation of a voidable deed is time-barred because they waited nearly ten years to sue. ...............................................................................20

  C.  Even if the Alfords have title, the Court should affirm the take-nothing judgment in EOG's favor because the Alfords did not present sufficient evidence of damages.............................................22

    1.  *There is no basis in this case for a remand on damages.*.......................23

    2.  *The Court should enter a take-nothing judgment on the Alfords' damages, because the Alfords did not present sufficient evidence of damages.* ...............................................................................24

Conclusion........................................................................................ 25

Certificate of Compliance ............................................................... 27

Certificate of Service........................................................................ 27

Appendix .......................................................................................... 28

# AUTHORITIES

**Cases**

*Alford v. Kuhlman Elec. Corp.*,
716 F.3d 909 (5th Cir. 2013) ..................................................... 17

*Arnold v. Ashbel Smith Land Co.*,
307 S.W.2d 818 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.) ..... 13, 14

*Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*,
409 S.W.3d 181 (Tex. App.—Dallas 2013, no pet.) ...................... 13, 19, 20

*Coker v. Coker*,
650 S.W.2d 391 (Tex. 1983) ........................................... 5, 7, 8, 10

*Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*,
999 S.W.2d 814 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ........ 20, 22

*Dupnik v. Hermis*,
No. 04-12-00417-CV, 2013 WL 979199 (Tex. App.—San Antonio
Mar. 13, 2013, pet. denied) ............................................. 20, 21

*Ford Motor Co. v. Castillo*,
444 S.W.3d 616 (Tex. 2014) ..................................................... 15

*Ford v. Exxon Mobil Chem. Co.*,
235 S.W.3d 615 (Tex. 2007) ..................................................... 21

*Foster Wheeler Energy Corp. v. An Ning Jiang MV*,
383 F.3d 349 (5th Cir. 2004) ..................................................... 17

*Glidden Co. v. CDNE, Inc.*,
No. 12-09-00283, 2011 WL 686286 (Tex. App.—Tyler Feb. 28,
2011, no pet.) ..................................................................... 9

*Guerini Stone Co. v. P.J. Carlin Constr. Co.*,
240 U.S. 264 (1916) ............................................................. 16

*Hill & Combs v. First Nat'l Bank*,
139 F.2d 740 (5th Cir. 1944) ..................................................... 17

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) ............................................................. 7, 8, 11

*Koepke v. Martinez*,
84 S.W.3d 393 (Tex. App.—Corpus Christi 2002, pet. denied)...............22

*Larson v. Cactus Util. Co.*,
730 S.W.2d 640 (Tex. 1987) ....................................................................23

*McBride v. Hutson*,
306 S.W.2d 888 (Tex. 1957) .................................................................... 14

*Oryx Energy Co. v. Shelton*,
942 S.W.2d 637 (Tex. App.—Tyler 1996, no writ)..................................24

*Owen v. Hendricks*,
433 S.W.2d 164 (Tex. 1968)................................................................ 11, 16

*Poag v. Flories*,
317 S.W.3d 820 (Tex. App.—Fort Worth 2010, pet. denied) ............. 20, 21

*Progressive Cnty. Mut. Ins. Co. v. Kelley*,
284 S.W.3d 805 (Tex. 2009) (per curiam) ............................................... 9

*Ralson Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc.*,
619 F.2d 374 (5th Cir. 1980) .................................................................... 17

*RSUI Indemn. Co. v. The Lynd Co.*,
No. 13-0080, 2015 WL 2194201 (Tex. May 8, 2015) ..................................7

*Slaughter v. Qualls*,
162 S.W.2d 671 (Tex. 1942) ..................................................................... 21

*Sullivan v. City of Galveston*,
17 S.W.2d 478 (Tex. Civ. App.—Galveston 1928), *aff'd by* 34 S.W.2d
808 (Tex. Comm'n App. 1931, judgm't adopted)................................17, 18

*Sullivan v. City of Galveston*,
34 S.W.2d 808 (Tex. Comm'n App. 1931, judgm't adopted) ...................18

*Tribble & Stephens Co. v. RGM Constructors, L.P.*,
   154 S.W.3d 639 (Tex. App.—Houston [14th Dist.] 2004, pet.
   denied)........................................................................................18, 19

**Other Authorities**

28 Tex. Jur. 3d *Damages* § 222 ....................................................24

Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and
   Leaves: An Encyclopedia of Canons of Construction*
   24 Tex. Tech L. Rev. 1 (1993)................................................14

**Rules**

Tex. R. App. P. 43.3..........................................................................23

Tex. R. App. P. 44.1..........................................................................24

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes the decisional process of the Court will not be significantly aided by oral argument. But if the Court grants Appellants' request for oral argument, Appellee requests the opportunity to respond in oral argument.

## ISSUES

### 1.

**Deed interpretation.** A deed is ambiguous when its meaning is uncertain or doubtful, or when the deed is reasonably susceptible to more than one meaning. The Alfords' deed states that the property being conveyed is "more particularly described by metes and bounds on Exhibit 'A', attached hereto," and the metes-and-bounds description included a mineral reservation. But the deed also has a section labeled "Reservations from conveyance and Warranty," that describes a reservation of a life estate. Was the trial court wrong to conclude that the deed was ambiguous regarding the mineral reservation?

### 2.

**Limitations.** A grantee seeking title through the interpretation of a voidable deed must sue within four years of the deed's execution. In 2012, the Alfords sued for title through the interpretation of a voidable 2003 deed. Is the Alfords' suit time-barred?

### 3.

**Damages.** The burden is on the plaintiff to establish its damages with reasonable certainty to enable a jury to compute them. The only basis given by the Alfords for computing their damages is a single royalty check to McKeithen. Neither the Alfords' lease nor McKeithen's was in evidence. Does the check to McKeithen under one lease enable the jury to compute the Alfords' damages under a different lease with unknown terms?

## INTRODUCTION

Having lost in the trial court because the mineral reservation in their deed was intentional and not the product of mutual mistake, and because, even if the reservation was a mistake, they failed to exercise due diligence in reading their deed, the Alfords seek to push the reset button. The Alfords now argue that there never should have been a trial—that, as a matter of law, the mineral reservation attached to their deed unambiguously is not part of the deed.

But the trial court and the jury were right to find: (1) that the deed was ambiguous; (2) that the mineral reservation was part of the deed; (3) that the inclusion of the mineral reservation was not a mutual mistake[1]; and (4) that the Alfords were not diligent in reading their deed.

The Alfords focus their appeal entirely on ambiguity: they say the trial court erred because, as a matter of law, the mineral reservation is unambiguously not part of the deed. The two grounds for the Alfords' argument are an inapplicable rule of construction and a fractured line of nonbinding and inapplicable cases discussing how one document may incorporate another.

Assuming the Alfords' cases are correct, the Alfords' interpretation of the deed may be reasonable (even though no one in this case except the Alfords has adopted it so far). But the question is not whether the Alfords' interpretation is reasonable; the question is whether EOG and McKeithen's view is

---

[1] Despite the jury's finding that there was no mutual mistake, the Alfords state in their brief that it "is clear" that the inclusion of the mineral reservation was a mistake. Alfords' Br. at 2.

*unreasonable*. If EOG and McKeithen's view is not unreasonable, then the deed is ambiguous, and the trial court's judgment must stand.

## FACTS

### A. In 2003, the Alfords bought the Jessups' pasture and home site.

The Alfords leased the Jessups' 117-acre pasture for several years before buying the pasture, along with the Jessups' 2-acre home site, in 2003.[2] The Alfords bought the land for an $80,000 note payable to the Jessups over eight years with no interest.[3]

### B. No one mentioned minerals in the handshake deal.

The purchase was basically a handshake deal.[4] Ms. Alford doesn't think mineral rights were ever mentioned.[5] That makes sense because Ms. Alford admits that minerals were never part of the agreement.[6] (The Alfords and the Jessups did, however, discuss a life estate to the Jessups in the home site.[7]) The Alfords would have bought the property with or without the minerals.[8]

---

[2] 3RR17, 22.
[3] 3RR19, 20.
[4] 3RR56
[5] 3RR20; 3RR56.
[6] 3RR53.
[7] 3RR22.
[8] 3RR53.

## C. The deed the Alfords were shown at closing contains a mineral reservation in Exhibit A, but the Alfords did not read it.

When the Alfords got to the title company for the closing, someone at the title company went over the terms of the conveyance with Ms. Alford.[9] Ms. Alford is sure she saw Exhibit A to the deed (the exhibit with the property description containing the mineral reservation) at the title company, but she admits that she didn't read it.[10] Mr. Alford didn't read Exhibit A either.[11]

## D. The Alfords sue nearly a decade later, seeking title through the interpretation of the deed.

In 2012, nearly a decade after signing the deed, the Alfords filed suit seeking a judgment declaring their title to 50% of the mineral rights under the pasture, or for reformation of the deed based on mutual mistake.[12] EOG was joined because, even though EOG has leases from both the Alfords and McKeithen, EOG had paid McKeithen royalties that the Alfords now claim should have gone to them.[13]

The Alfords moved for summary judgment on deed interpretation, asking the court to declare the mineral reservation to be unambiguously not part of the deed.[14] The trial court denied that motion, and the Alfords re-urged the

---

[9] 3RR29.

[10] 3RR30.

[11] 3RR86.

[12] 1CR7-9.

[13] All references to EOG in this brief also include Central Texas Land Services.

[14] 2CR110.

issue just before trial in a "Motion to Construe Document."[15] The Alfords also filed a supplemental petition alleging that the deed is ambiguous.[16]

### E. The trial court rules that the deed is ambiguous, and the jury finds that the Alfords do not have title to the minerals and are not entitled to reformation.

The trial court ruled that the deed was ambiguous.[17] The jury found that the Alfords did not have title to the minerals, that the Alfords were not entitled to reformation based on mutual mistake, and that the Alfords were not diligent in reviewing their deed.[18]

The Alfords now argue that the trial court erred in finding the deed ambiguous.

## SUMMARY OF THE ARGUMENT

This case is a poor vessel for "testing the limits of incorporation."[19] The Court need not trouble itself with the Alfords' complicated theory of incorporation cobbled together from disparate federal-court and state-court opinions.

The trial court ruled that the deed in this case was ambiguous.[20] Thus, the interpretation of the deed was a question for the jury, and the Alfords

---

[15] 3CR87, 118.

[16] 3CR125.

[17] 1Supp. CR4.

[18] 2Supp. CR8-10.

[19] Alfords' Brief at 2.

[20] 1 Supp. CR4.

have not challenged the jury's findings. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) (interpretation of an ambiguous instrument is a fact issue).

The trial court did not err in ruling that the deed was ambiguous. A deed is ambiguous when its meaning is uncertain and doubtful or the deed is reasonably susceptible to more than one meaning. *Id.* at 393. The Alfords' deed states that the property being conveyed is "more particularly described by metes and bounds on Exhibit 'A' attached hereto," and the metes-and-bounds description includes a mineral reservation.[21] Does the deed contain a mineral reservation?

Maybe. The Alfords' complicated incorporation law just goes to show that the deed is ambiguous. Of course it's reasonably possible that the deed incorporated Exhibit A only for the part of Exhibit A that strictly defines the metes and bounds. But it's equally within reason that the mineral reservation included in the metes-and-bounds description (in the same font and text block) was also incorporated: after all, the reservation was part of the metes and bounds, and the deed language referring to Exhibit A is not clear about what is incorporated.

The Court should therefore affirm the trial court's ruling that the deed was ambiguous.

On top of that, there are two more reasons to affirm. One, under Texas law, the Alfords had four years to sue seeking title through the construction

---

[21] App. A, Deed.

of a voidable deed. The Alfords, after failing to read their deed before signing, waited nearly a decade to sue. Their claim is therefore time-barred.

And two, even if the Court finds that the Alfords have title, the Alfords still have not proved that they are owed damages by EOG. The only evidence of damages offered by the Alfords was a royalty check from EOG to McKeithen, the other alleged owner of the minerals at issue. But the Alfords have not shown how the check to McKeithen provides a legal measure of the Alfords' damages. Therefore, even if the Court finds that the Alfords have title, the Court should affirm the take-nothing judgment in favor of EOG.

## ARGUMENT

The Court should affirm the trial court's judgment in EOG's favor for three reasons.

First, the trial court correctly determined that the Alfords' deed was ambiguous. Even if the Alfords' interpretation of the deed is reasonable, that still leaves the deed ambiguous, because EOG's interpretation is also reasonable. And the Alfords have not challenged the fact issue of the ambiguous deed's interpretation.

Second, the Alfords' suit for title through a voidable deed is time-barred because the Alfords waited nearly a decade to sue.

And third, even if the Court finds that the Alfords own the minerals, the Court should still affirm the take-nothing judgment in EOG's favor because the Alfords did not produce sufficient evidence of damages due from EOG.

**A. The trial court rightly held that the Alfords' deed is ambiguous.**

If the Court affirms that the deed is ambiguous, that is the end of the appellate analysis. The reason is that while the Alfords have challenged the trial court's predicate finding of ambiguity, the Alfords have not challenged the jury's factual finding that the mineral reservation was part of the deed. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) (interpretation of an ambiguous instrument is a fact issue). So if the deed is ambiguous, then the jury's finding that the mineral reservation was part of the deed must be affirmed. And the deed is ambiguous.

### 1. *A deed is ambiguous when its meaning is uncertain and doubtful, or when the deed is reasonably susceptible to more than one meaning.*

When interpreting documents, the court "examine[s] and consider[s] the entire writing in an effort to harmonize and give effect to all the provisions…so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

A document is unambiguous "if it can be given a definite or certain legal meaning." *Id.* at 229. But if its meaning is uncertain and doubtful, or if it is reasonably susceptible to more than one meaning, then the document is ambiguous. *Id.*; *Coker*, 650 S.W.2d at 393; *see RSUI Indemn. Co. v. The Lynd Co.*, No. 13-0080, 2015 WL 2194201, at *3 (Tex. May 8, 2015) ("[I]f both constructions present reasonable interpretations of the [contract]'s language, we must conclude that the [contract] is ambiguous.").

The court may look at the circumstances of the document's formation when deciding ambiguity. *Coker*, 650 S.W.2d at 394. Whether a document is ambiguous is a question of law; but once a document is found ambiguous, its interpretation is a question of fact. *Webster*, 128 S.W.3d at 229.

Several cases in the Supreme Court and this Court illustrate when a document is ambiguous.

In *J.M. Davidson, Inc. v. Webster*, the Supreme Court found a document ambiguous because it was unclear how two provisions in the document related to one another. 128 S.W.3d at 229. The one-page document, entitled "Alternative Dispute Resolution Policy" and "Employment Application Language," stated in one paragraph that the employee agreed to arbitrate all employment-related disputes, and in a later paragraph that the employer "reserves the right to unilaterally abolish or modify any personnel policy without prior notice." *Id.* at 225–26.

The Court could not give the document a definite meaning because it was unclear whether the employer's right to unilaterally modify "personnel policies" included the right to terminate the arbitration agreement, thus rendering the arbitration agreement illusory and nonbinding. *Id.* at 229. Because the Court could not interpret the document "by reading the agreement's terms," the Court found the document ambiguous. (The Court also noted that the court of appeals and even the Supreme Court was divided on how to interpret the document. *Id.* at 229–31.)

In *Progressive Cnty. Mut. Ins. Co. v. Kelley*, the court of appeals found that two separate insurance documents unambiguously constituted two separate insurance policies, and the Supreme Court reversed, finding that it was ambiguous whether the documents created one policy or two. 284 S.W.3d 805 (Tex. 2009) (per curiam). Although the documents had separate policy numbers, the second document referred to a "multi-car discount" but only listed one car (the first document listed four cars). *Id.* at 807. The Supreme Court, finding "some ambiguity" on that basis, considered parol evidence to interpret the parties' understanding, but still concluded that their intent was ambiguous, and remanded. *Id.* at 807-08.

Finally, in *Glidden Co. v. CDNE, Inc.*, No. 12-09-00283, 2011 WL 686286 (Tex. App.—Tyler Feb. 28, 2011, no pet.), this Court affirmed the trial court's award of contract damages based on one definition of "costs" over another, finding that the contract was ambiguous about the meaning of that term. *Id.* at *4. The Court considered the dictionary definition of "costs" and how the term was used in the parties' agreement, and determined that "the term 'costs' is reasonably susceptible to more than one meaning." *Id.* The Court therefore held the contract ambiguous, and found that the evidence supported the trial court's fact finding on its interpretation. *Id.*

Like the documents in these cases, the Alfords' deed is also ambiguous.

### 2. The Alfords' deed is ambiguous because the effect of the mineral reservation is at best unclear and there are two reasonable interpretations of the deed.

Even if the Alfords' interpretation of the deed is reasonable, the deed is ambiguous because EOG's interpretation is equally reasonable.

#### a. Because the Alfords and the Jessups did not discuss minerals when negotiating the deed, the deed's circumstances do not affect the ambiguity analysis.

While a document's circumstances are part of the ambiguity analysis, *Coker*, 650 S.W.2d at 394, here the circumstances do not push the analysis one way or the other. The reason is that, by Ms. Alford's admission, the minerals were never mentioned when the deed was negotiated.[22] Thus, the circumstances here are silent.

#### b. The effect of the mineral reservation in the deed is at best unclear, and there are two reasonable interpretations of the deed.

The Alfords' deed, after describing the property by reference to an earlier deed, states that the property is "more particularly described by metes and bounds on Exhibit 'A' attached hereto."[23] The tract at issue is tract one in the deed. And the description of tract one in Exhibit A includes, in the same text block and font as the metes-and-bounds description, a mineral reservation.[24] The metes-and-bounds description of tract two does not include a mineral

---

[22] 3RR20.
[23] App. A, Deed.
[24] App. A, Deed.

reservation.[25] But a life-estate reservation in tract two is stated on the face of the deed.[26]

One interpretation of the deed—the one urged by EOG and McKeithen and found by the jury—is that the reference to Exhibit A is not limited to a single purpose, and so the mineral reservation is part of the deed. The deed refers to Exhibit A, relies on Exhibit A, and never states that Exhibit A is attached only for a certain purpose.[27] (The deed does not state, as the Alfords claim in their brief, that the parties "were attaching Exhibit A for the sole purpose of providing a metes and bounds description."[28])

In support of EOG and McKeithen's view is established contract law, under which all parts of a document are to be given meaning, and none are to be rendered meaningless. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. EOG's view effectuates the mineral reservation, while the Alfords' view nullifies it. *See Dupnik v. Hermis,* No. 04-12-00417, 2013 WL 979199, at *5 (Tex. App.—San Antonio Mar. 13, 2013, pet. denied) (finding that a reservation of "none" on the face of a deed, combined with the phrase "surface only" in the attached property description, unambiguously reserved the mineral estate).

Another point in support of EOG and McKeithen's view is the long line of Texas cases, including *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968),

---

[25] App. A, Deed.
[26] App. A, Deed.
[27] App. A, Deed.
[28] Alfords' Br. at 7.

stating that the "language used [to incorporate another document] is not important provided the document signed…plainly refers to another writing." The mineral reservation in Exhibit A meets the *Owen* standard for incorporation (the deed "plainly refers" to Exhibit A), and is therefore part of the deed.

The Alfords make much of the fact that the only reservation stated on the face of the deed was a life estate in tract two (the home site),[29] but that makes sense considering that a life estate was not already included in the metes-and-bounds description for tract two on Exhibit A. The parties did not have to repeat a mineral reservation for tract one on the face of the deed because the reservation was already included on Exhibit A. And as for having the parties initial the life-estate reservation, that too makes sense: the Jessups presumably cared much more about confirming the reservation of a life estate in their home than they did about a mineral estate that couldn't keep the rain off their backs.

The other interpretation of the deed—the one urged by the Alfords—is that the deed incorporates Exhibit A only for the metes and bounds description (without the mineral reservation), and so the mineral reservation is not part of the deed. The points in favor of this view are that, while the deed does not expressly limit its incorporation of Exhibit A, the deed does refer to Exhibit A in the context of a metes-and bounds-description. Buttressing this

---

[29] *Id.* at 8–9.

view is the line of mostly federal cases (with a few state court-of-appeals cases) seeming to go beyond *Owen* in discussing the incorporation of documents for a narrow purpose. *See Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.).

Both of these views are reasonable, and therefore the deed is ambiguous. The Alfords, however, argue that two things make EOG's interpretation unreasonable: (1) the rule of construing reservations and deeds against the grantor; and (2) the law of incorporation of documents. The Alfords are wrong that these points make EOG's interpretation unreasonable.

    **i.  The Alfords' deed should not be construed against the grantors because both parties had an equal opportunity to control the contents of the deed and the Alfords admit that they did not read the whole deed before signing.**

The Alfords argue that the familiar rule of construing reservations and deeds against the grantor requires favoring the Alfords' interpretation over EOG's.[30] There are two reasons why the Alfords are wrong.

First, this rule of construction does not apply without a predicate finding of ambiguity. *See Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 824 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.) (citation and quotation omitted) ("[The rule of strict construction against the grantor] is not applicable in the absence of ambiguity."); *but see* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*

---

[30] Alfords' Br. at 4.

24 Tex. Tech L. Rev. 1, 108–111 (1993) (questioning the requirement of requiring ambiguity before construing against the drafter). The Alfords argue that their deed is unambiguous, so under their view this rule of construction cannot apply here. (The Alfords are not challenging the jury's interpretation of the deed.)

Second, the Alfords ignore the rationale of the "construe against the grantor" rule, and the rationale does not apply here. The rule "is never used as a hypercritical and overly literal tool," as the Alfords want to use it. *Arnold*, 307 S.W.2d at 824 (quotation and citation omitted). The rule has a common-sense purpose: "The underlying rationale for this canon is that the scrivener, who is usually the grantor, should be responsible for the lack of clarity in the use of the language." Kramer, *supra* at 116. Thus, "[i]n cases where…both parties are equally responsible for the drafting of the instrument, this canon should not apply." *Id.* (citing *McBride v. Hutson*, 306 S.W.2d 888, 891–92 (Tex. 1957) (construing instrument in favor of grantor when drafted by grantee)).

Therefore, it's important to know who drafted the deed in a particular case. Here, an assistant at the title company prepared the closing documents, and they were reviewed by an attorney there.[31] The assistant, who walks the parties through the closing, testified that her practice was to go over all the documents with both parties and makes sure everything is correct.[32] She said

---

[31] 4RR25, 53.
[32] 4RR17.

that she would "review all of the information on the document.... Anything that's on that document, I would review with [the parties]."[33] Asked about "the source of your information to know what to prepare when you prepare the documents,"[34] the assistant said: "The parties of the transaction would come in and give us the information."[35] The assistant confirmed that this practice was applied in every case, in every situation.[36]

So the evidence in this case is that the Alfords had an equal opportunity to contribute to the deed's contents and to review those contents before signing.[37] The real problem is that the Alfords weren't diligent in reviewing Exhibit A before signing the deed. The Alfords' lack of diligence is not a valid reason for construing the deed against the Jessups.

Thus, the "construe against the grantor" rule does not render EOG's interpretation of the deed unreasonable.

---

[33] 4RR18.

[34] 4RR18.

[35] 4RR18.

[36] 4RR19. Ms. Alford did testify that the deed was already prepared when she arrived at the title company, 3RR21–22, but she admits that the assistant went over the terms of the deed with her. 3RR29. And Ms. Alford admits that she held the deed for a few days before filing it, to make sure the Jessups were comfortable with the sale. 3RR32. This implies that during those days the deal was not, in Ms. Alford's mind, finished, and thus could be altered.

[37] When reviewing the sufficiency of the evidence supporting a jury verdict, the court "must view the evidence in the light most favorable to the verdict" and "assume jurors made all inferences in favor of the verdict if reasonable minds could, and disregard all other inferences." *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620–21 (Tex. 2014) (quotations and citations omitted) (upholding jury verdict of fraudulent inducement).

### ii. The Alfords' nonbinding cases on incorporation by reference do not render EOG's interpretation of the deed unreasonable.

The Alfords also argue that the doctrine of incorporation by reference makes their interpretation reasonable and EOG's interpretation unreasonable.[38] The caselaw cited by the Alfords, however, does not support their argument. Here is why.

The Alfords admit that there appears to be a split in the cases dealing with incorporation by reference.[39] One line, which the Alfords call the *Owen* line, after *Owen v. Hendricks*, says that the incorporation language used is not important so long as one document plainly refers to the other. 433 S.W.2d 164, 166 (Tex. 1968). Here the deed refers to Exhibit A as being "attached hereto," which, under *Owen*, would incorporate the mineral reservation because the mineral reservation is on Exhibit A.[40]

The other line of cases cited by the Alfords begins with a hundred-year-old United States Supreme Court case, *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264 (1916), and runs through several Fifth Circuit and Texas court-of-appeals cases.[41] This line of cases states that a reference to another document "for a particular purpose" incorporates the document only for that purpose. *Id.* at 277. The Alfords cite four federal cases and three Texas cases that refer to the *Guerini* rule. None of these cases controls here.

---

[38] Alfords' Br. at 2, 4–6.
[39] Alfords' Br. at 4–5.
[40] App. A, Deed.
[41] Alfords' Br. at 5–6.

Only one of the federal cases cited by the Alfords arises under Texas law. But that case, *Hill & Combs v. First Nat'l Bank*, 139 F.2d 740 (5th Cir. 1944), did not cite any Texas law on incorporation, and affirmed a jury verdict on interpretation because the contract was ambiguous, which is the result that EOG urges here. *Id.* at 743.

The other three federal cases cited by the Alfords are not relevant either. Each of those cases arose in another state and was governed by other law. *See Ralson Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc.*, 619 F.2d 374, 374–75 (5th Cir. 1980) (admiralty case originating in Louisiana involving a federal maritime statute); *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 358–59 (5th Cir. 2004) (admiralty case originating in Louisiana involving a federal maritime statute and an international maritime agreement); *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 913 (5th Cir. 2013) (contract case originating in Mississippi applying Mississippi law).[42]

The first Texas case cited by the Alfords is *Sullivan v. City of Galveston*, 17 S.W.2d 478 (Tex. Civ. App.—Galveston 1928), *aff'd by* 34 S.W.2d 808 (Tex. Comm'n App. 1931, judgm't adopted). *Sullivan* involved two sureties who backed their principal's obligation to pay a certain rate of interest on a bond issued to the city. *Id.* at 480–81. The sureties agreed to pay "the rate stipulated in [the principal's] written obligation of even date herewith." *Id.* at 480.

---

[42] Each of these federal cases is also distinguishable on the facts and the holdings, but EOG will not discuss those distinctions because it is sufficient that the cases do not involve Texas law.

But there was no written interest obligation "of even date herewith"—the "written obligation" (a bond to the city) stating the interest rate was dated several months before. *Id.* at 481. The sureties claimed that their surety obligation was therefore void, but the court of appeals found that "it is clear from all the facts and circumstances in evidence that all the parties to the transaction understood what paper was referred to, and that it was referred to only for the purpose of fixing the rate of interest." *Id.* at 490. The court went on, citing *Guerini* but no Texas cases, to note that the outside document had no effect on the referring document other than to supply the interest rate. *Id.*

Apart from not being binding on this Court, *Sullivan* does not apply here for two reasons. One, *Sullivan* was based on "all the facts and circumstances" evidencing the parties' understanding, not on the particular words of incorporation. So the *Guerini* reference is merely dicta. And two, the Commission of Appeals opinion in *Sullivan* (which the Alfords did not cite) relied not on *Guerini* but on common sense: the interest rate, said the Commission of Appeals, "can be…ascertained" without the referenced document because the rate was stated in the city board's resolution authorizing the bond in the first place. 34 S.W.2d at 811–12. Thus, according to the Commission of Appeals, "the fact that the reference was made to a written instrument which did not exist becomes immaterial." *Id.* at 811.

The second Texas case cited generally by the Alfords (without a pin citation or any quoted language) is *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

*Tribble* was, like *Guerini*, a construction-contract case. *Id.* at 663–64. *Tribble* held that a "flow down" provision in the contractor–subcontractor contract did not as a matter of law incorporate an alternate-dispute-resolution provision of the contractor–owner contract. *Id.* at 663–64. The court found that "fact issues exist as to the intent of the parties" to bind the subcontractor to the ADR provision. *Id.* at 669. Thus, this case favors EOG and not the Alfords.

The final Texas case cited by the Alfords as support for *Guerini* is *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181 (Tex. App.— Dallas 2013, no pet.). *Dent Zone* involved a one-page application for Dent Zone's "PDR Linx Service Program." The application said that "Additional benefits, qualifications, and details of the [program] are available for your review at our website: [url]." *Id.* at 184 n.1. When Dent Zone sued and the Chevrolet dealership objected to Texas jurisdiction, Dent Zone cited a forum-selection clause listed on the website referenced in the application. *Id.* at 184–85.

After citing Texas law on incorporation by reference, including *Owen*, the court of appeals referred to "the general principal of contract law that reference to a document for a particular purpose incorporates that document only for the specified purpose." *Id.* at 189. For this "general principal," the court of appeals cited not a single Texas case, but rather a section in *Corpus Juris Secundum*. *Id.* at 189. The court of appeals then found that the internet document was not incorporated into the application for any purpose, but instead

contained "informative material only, not binding terms and conditions." *Id.* at 190. Thus, the "particular purpose" language in *Dent Zone* is dicta. The court found that there was no incorporation at all.

Therefore, the incorporation cases cited by the Alfords do not show that EOG's interpretation of the deed is unreasonable.

### B. The Alfords' attempt to seek title through the interpretation of a voidable deed is time-barred because they waited nearly ten years to sue.

In addition to ambiguity, there is another ground for affirmance: limitations.[43] EOG and McKeithen pleaded limitations as a defense in the trial court and moved for a directed verdict on limitations.[44] This claim may be decided as a matter of law, because when a claim accrues is a question of law. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

A suit seeking title through the interpretation of a voidable deed must be brought within four years of when the claim accrues. *Poag v. Flories*, 317 S.W.3d 820, 826 (Tex. App.—Fort Worth 2010, pet. denied) (suit seeking to quiet title through interpretation of deed is barred by four-year statute); *Dupnik v. Hermis*, No. 04-12-00417-CV, 2013 WL 979199, at *2–*3 (Tex. App.—San Antonio Mar. 13, 2013, pet. denied) (trespass-to-try-title suit where parties sought interpretation of deed is barred by four-year statute).

---

[43] *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (noting that an appellee may, by cross-point, present an additional ground for affirmance).

[44] 3CR106, 112; 4RR76–87.

A deed is void when it has no legal effect. *Poag*, 317 S.W.3d at 825–26 (quoting *Slaughter v. Qualls*, 162 S.W.2d 671, 676 (Tex. 1942)). A deed is voidable when it "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." *Id.*

The legal injury caused by a voidable deed occurs when the deed is recorded, or, in limited cases, when the flaw is discovered. *Id.* at 827; *Dupnik*, 2013 WL 979199, at *4; *see also Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice of defects).

The Alfords' deed is voidable, not void, because it admittedly accomplished a transfer of title to the Alfords: the Alfords received the surface estate conveyed in the deed.

The Alfords' deed was recorded in April 2003.[45] The Alfords sued in 2012.[46] The Alfords' claims accrued when they executed and recorded their problematic deed. *Poag*, 317 S.W.3d at 827. And even if the Alfords' claims could be tolled by the discovery rule, the discovery rule does not apply here because the Alfords admit that they did not read all of the deed.[47] *Dupnik*, 2013 WL 979199, at *4. On top of that, the jury found that the Alfords were not diligent.[48]

---

[45] App. A, Deed.

[46] 1CR4.

[47] 3RR30, 86.

[48] 2Supp. CR10.

The Alfords' suit is therefore time-barred because they waited nearly ten years to sue.

## C. Even if the Alfords have title, the Court should affirm the take-nothing judgment in EOG's favor because the Alfords did not present sufficient evidence of damages.

Even if the Court finds that the Alfords, rather than McKeithen, have title to the minerals, the Court should affirm the take-nothing judgment in favor of EOG, because the Alfords have no evidence of damages owed by EOG.[49]

The jury did not answer the damages question in the charge because they found that the Alfords did not own the minerals.[50] But EOG moved for a directed verdict on the Alfords' damages.[51] A directed verdict is proper when "the evidence offered on a cause of action is insufficient to raise an issue of fact." *Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.—Corpus Christi 2002, pet. denied). Because the trial court denied EOG's motion for directed verdict, this Court may review that denial under a legal sufficiency or no-evidence standard. *Id.*[52]

---

[49] This basis for affirmance is being raised under the same authority as EOG's limitations argument: *Dean*, 999 S.W.2d at 818 (noting that an appellee may, by cross-point, present an additional ground for affirmance).

[50] 2Supp. CR8, 12.

[51] 4RR88.

[52] EOG is not required to raise this point as an appellant, because a win on this issue does not increase EOG's trial-court relief. *See Dean*, 999 S.W.2d at 818 (noting that an appellee may, by cross-point, present an additional ground for affirmance that does not expand the relief sought).

### 1. *There is no basis in this case for a remand on damages.*

The Alfords ask the Court, upon determining the mineral ownership, to remand on the issue of damages for removal of the minerals. But there is no basis for a remand on damages.

The Rules of Appellate Procedure state that "[w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered." TEX. R. APP. P. 43.3; *see also Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987) ("If a court of appeals holds that there is no evidence to support a damages verdict, it should render a take nothing judgment as to that amount."). The only exceptions are when "a remand is necessary for further proceedings" or "the interests of justice require a remand for another trial." TEX. R. APP. P. 43.3(a)–(b).

If this Court finds that the Alfords have mineral title, then the Court should render the judgment that the trial court should have rendered. No further proceedings are necessary, because the parties have already tried this case to a verdict on damages.[53] Nor are there any special circumstances invoking the "interest of justice" exception.

Therefore, if the Alfords have title, the question on appeal is what judgment the trial court should have rendered on the Alfords' damages. The answer is a take-nothing judgment.[54]

---

[53] 2Supp. CR13.

[54] If the Court does remand for a trial on damages, the Court should remand on liability as well. TEX. R. APP. P. 44.1 ("The court may not order a separate trial solely on unliquidated damages if liability is contested.").

### 2. The Court should enter a take-nothing judgment on the Alfords' damages, because the Alfords did not present sufficient evidence of damages.

"The burden is on the plaintiff to establish its damages with reasonable certainty to enable a jury to compute them." *Oryx Energy Co. v. Shelton*, 942 S.W.2d 637, 642 (Tex. App.—Tyler 1996, no writ). "A plaintiff must prove, with some degree of certainty, a factual basis to support the amount of damages awarded." 28 Tex. Jur. 3d *Damages* § 222.

Because EOG owns a mineral lease covering the Alfords' land, the only damages the Alfords could be entitled to if they own the minerals are unpaid royalties. Apparently recognizing this, the only evidence offered by the Alfords to show damages is a check from EOG to McKeithen (as guardian of the Jessups' estate) for $167,000 with the memo: "Royalty Account."[55] The check does not state what the royalty is attributable to, but McKeithen testified that it was from the Jessups' property (the property claimed by the Alfords).[56]

The basis for EOG's directed-verdict motion was that the Alfords put forth no evidence of (1) the amount of production from their claimed minerals; (2) the revenue produced from the minerals; or (3) their royalty interest in the minerals.[57] Thus, EOG argued, the jury cannot calculate what the Alfords' damages are.[58]

---

[55] 3RR69 at Ex. 13.
[56] 3RR69.
[57] 4RR88.
[58] 4RR88.

The Alfords responded to EOG's motion by pointing solely to the "amount [EOG] paid McKeithen," as evidenced by the royalty check.[59] But that check cannot enable the jury to compute the Alfords' damages.

The jury cannot compute what the Alfords should have been paid based solely on the check to McKeithen because the Alfords and McKeithen have different leases. And neither the Alfords' lease nor McKeithen's lease was introduced at trial, so the Alfords have not proved that the lease terms under which McKeithen was paid are the same as the lease terms under which the Alfords would be paid if they owned the minerals.[60]

Because the Alfords have not given the jury (and thus this Court) a sufficient factual basis to compute the damages owed to them, the Court should affirm the take-nothing judgment in favor of EOG.

## CONCLUSION

This Court should affirm the trial court's judgment in EOG's favor for three reasons.

First, the trial court was right to find the Alfords' deed ambiguous. Even if the Alfords' interpretation of the deed is reasonable, that still leaves the deed ambiguous, because EOG's interpretation is also reasonable. And the Alfords have not challenged the jury's interpretation of the ambiguous deed.

---

[59] 4RR88.

[60] The Alfords introduced a memorandum of their lease, but the memorandum merely states the primary term of the lease, not the royalty terms. 5RR at Ex. 10. No part of McKeithen's lease was introduced.

Second, the Alfords' suit for title through a voidable deed is time-barred because the Alfords waited nearly a decade to sue.

And third, even if the Court holds that the Alfords own the minerals, the Court should still affirm the take-nothing judgment in EOG's favor because the Alfords did not produce sufficient evidence of damages due from EOG.

Respectfully submitted,

/s/ *Jason R. Mills*

Jason R. Mills
Bar No. 24041494

## CERTIFICATE OF COMPLIANCE

Counsel certifies that this brief contains, as counted by MICROSOFT WORD, 6184 words. It was typed in 14-point Equity.

Dated: July 10, 2015
/s/ *Jason R. Mills*
Jason R. Mills

## CERTIFICATE OF SERVICE

Counsel certifies that this brief was served on the following parties through e-filing on July 10, 2015.

Tom Rorie
ATTORNEY AT LAW
210 North Street
Nacogdoches, Texas 75961
936.559.1188 *phone*
936.559.0099 *fax*

Noel D. Cooper
LAW OFFICES OF NOEL D. COOPER
117 North Street, Ste. 2
Nacogdoches, Texas 75961
936.564.9000 *phone*
936.715.6022 *fax*

Bill McWhorter
BILL MCWHORTER & ASSOCIATES
119 North Street, Ste. A
Nacogdoches, Texas 75961–5200
936.564.2676 *phone*
936.564.6455 *fax*

/s/ *Jason R. Mills*
Jason R. Mills

# APPENDIX

1.  Appendix A — Deed, Apr. 25, 2003.

# APPENDIX
# A

*to Appellee's Brief*

—

Deed, April 25, 2003

298

FILE NO. 7437
FILED 25 DAY OF Apr. , 2003
AT 3:00 O'CLOCK P. M.
DIANA KOVAR, COUNTY CLERK
SAN AUGUSTINE CO., TEXAS
BY D. Kovar DEPUTY

## WARRANTY DEED WITH VENDOR'S LIEN

**Date:** April 25, 2003

**Grantor:** JACK P. JESSUP AND WIFE, ANNIE ELIZABETH JESSUP

**Grantor's Mailing Address (including county):** Route 3, Box 484, San Augustine, San Augustine County, Texas 75972

**Grantee:** CHARLES ALFORD AND WIFE, MARY LOU ALFORD

**Grantee's Mailing Address (including county):** Route 1, Box 529, San Augustine, San Augustine County, Texas 75972

**Consideration:**
(1) The sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to Grantor paid, cash in hand, by Grantee herein, the receipt of which is hereby acknowledged; and

(2) A note of even date that is in the principal amount of $80,000.00 and is executed by Grantee, payable to the order of Grantor. It is secured by a vendor's lien retained in this deed and by a deed of trust of even date from Grantee to J. Ken Muckelroy, Trustee.

**Property (including any improvements):**
**TRACT ONE:**
BEING 117.50 acres of land, situated on Curtis Jessup Survey, about seven miles west of the town of San Augustine, in San Augustine County, Texas, and being the property described in Deed from T. B. Fountain and wife, Minnie Fountain, C. C. Burns and wife, Mary Burns, and J. S. Jessup and wife, Una Jessup, to Jack Jessup, dated May 24, 1950, recorded in Vol. 105, Page 498, Deed Records, San Augustine County, Texas, and being more particularly described by metes and bounds on Exhibit "A" attached hereto.

**TRACT TWO:**
BEING 2 acres, more or less, and being all that certain tract, lot or parcel of land, situated in San Augustine County, Texas, and being out of and a part of the Curtis Jessup Survey, about 8 miles West of the town of San Augustine, Texas, and being the property described in Deed from J. S. Jessup (Sharp Jessup) and wife, Una Jessup, to J. P. Jessup and wife, Annie Elizabeth Jessup, dated October 17, 1958, recorded in Vol. 122, Page 206, Deed Records, San Augustine County, Texas, and being more particularly described by metes and bounds on Exhibit "A" attached hereto.

**TRACT THREE:**
BEING all of Grantors (Jack P. Jessup's) undivided interest in and to 9 acres of that certain 110.5 acre tract as described in Deed of Gift from Jenettie Jessup Stotts, Glenn Ray Jessup and Johnnie Dell Jessup Dumesnil, dated June 23, 1982, recorded in Vol. 235, Page 424, Deed Records, San Augustine County, Texas.

**Reservations from Conveyance and Warranty:** For Grantor, a reservation of the full possession, benefit, and use of Tract Two for the remainder of the life of Grantor, as a life estate.

**Exceptions to Conveyance and Warranty:**
Easements, rights-of-way and prescriptive rights, whether of record of not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances and other instruments, other than liens and conveyances, that affect the property.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in anywise, belonging, to have and to hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this Deed shall become absolute.

When the context requires, singular nouns and pronouns include the plural.

JACK P. JESSUP

ANNIE ELIZABETH JESSUP

PLAINTIFFS'
EXHIBIT 2

S614

THE STATE OF TEXAS
COUNTY OF SAN AUGUSTINE

This instrument was acknowledged before me by JACK P. JESSUP AND WIFE, ANNIE ELIZABETH JESSUP, on this the 25th day of April, 2003.

CONNIE VAUGHN
Notary Public
State of Texas
My Commission Expires
July 2, 2006

NOTARY PUBLIC FOR THE STATE OF TEXAS

PREPARED BY: J. KEN MUCKELROY, ATTORNEY AT LAW, P.C.
104 South Broadway, San Augustine, Texas 75972
Phone: (936) 275-2304 Fax: (936) 275-2305
AFTER RECORDATION, PLEASE RETURN TO J. KEN MUCKELROY, ATTORNEY

mw:\e:\andj\jessup-alford.ofcv; JKM; TC

300

## TRACT ONE:

tract or parcel of land situated on Curtis Jessup survey about seven miles west of the town of San Augustine, in San Augustine County, Texas. Beginning at the S.W.corner of 112.5 acre survey on the Curtis Jessup survey, Iron rod pine 6" N.48 W.4.7 vrs; B.G.L 4" S.16 E.10 vrs.; Thence S.83.W.1001 vrs.to corner an ash N.57 E.S.5/6 vr.corner is on west bank of branch;
Thence with west bdg.of Curtis Jessup survey as follows,to-wit: 1st.N.6 E.352 vrs..2nd.N.34 E.150 vrs.,3rd.N 9 E.85 vrs.to the ninth corner of the Curtis Jessup survey on the West bank of a branch this is the S.E.corner of a 23 acre survey out of the Curtis Jessup survey,N.W. corner for Willie Nichols witness trees are gone,thence down the said branch which is the E.B.line of the Willie Nichols 23 acre survey as follows,to-wit: 1st: N. 18 E. 26 vrs; 2nd: N.72 E. 45 vrs. 3rd:N. 30 E. 80 vrs 4th:N.24 E.70 vrs.5th N.29.30 E.120 vrs. 6th.N.16.30.W.80 vrs.7th.N.17.30 W. 185 vrs.to stake on west bank of a branch 28" N.W. Elm S. 1 E.7.5 vrs; Thence N.28 W. 75 vrs.to corner on South bank of Neciper creek; Thence up said creek, 1st.84.30 E.124 vrs. 2nd.S.80.30 E.70 vrs.3rd N.62.30 . E.100 vrs.4th.S.62 E.70 vrs. 5th.N.6.90 vrs. 6th. S.61.15 E.80 vrs. to iron stake South Bank,Neciper creek. Thence S.23.45 W.1175 vrs.to beginning,containing 117.5 acres of land. It is hereby understood and agreed by and between the parties hereto that the grantors herein reserves in their own right one half of all mineral rights of every kind and character which may be on or under the above described tract of land with the right of ingress and egress over and on said land for the purpose of mining and drilling for oil and other minerals without interference of assigne or his assigns.

## TRACT TWO:

that certain tract, lot or parcel of land, situated in San Augustine County, Texas, being out of and a part of the Curtis Jessup Survey, about 8 miles West of the town of San Augustine, Texas, and being out of the 1st. tract described in an oil, gas and mineral lease executed by Sharp Jessup and wife, to T. W. Blount and W. F. Hays, recorded in Volume 92, p. 319 of the Deed Records of San Augustine County, Texas, being known as a 75 acre tract, and being 2 acres of land, and thus described:

BEGINNING at a point in the EBL of said 75 acre, S. 24 1/2 deg. East 240 feet from the NE corner of said 75 acre tract in the S.Bank of Neciper Creek (now called Rocky Creek);

THENCE South 24 1/2 deg. E. with the EBL of said 75 acre tract, 300 feet;

THENCE at right angles to said EBL (approximately S. 66 deg. W.) 290 1/2 feet;

THENCE North 24 1/2 deg. West parallel with the EBL of said 75 acre tract 300 feet;

THENCE at right angles (approximately N. 66 deg. East) 290 1/2 feet to the beginning, containing 2 acres, more or less.

EXHIBIT "A"